KATHRYN ATER *et al.* Defendants in Error, *vs.* CHARITY
SMITH *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1910.*

1. REAL PROPERTY—*when parties are entitled to partition as by
an agreed division.* Where the division of land made by a father
among all of his children by deeds which were invalid for want
of delivery in the grantor's lifetime is adopted by the children and
each child enters into the open, exclusive and adverse possession
of the land intended for him, claiming ownership, and thereafter
exercises, without question by the others, all acts of ownership for
many years, each child becomes the owner of the tract so occupied
by him and is entitled to partition on the basis of such division.

2. SAME—*effect of parol partition followed by possession.* A
parol partition of land, and possession taken thereunder, vests the
equitable title to the respective tracts according to such partition
and possession, but the legal title remains in the persons in whom
it was before the partition was made, and in order to make title to
a purchaser it is necessary that all such persons shall join in a con-
veyance to him; and the fact that they join in a conveyance of
one tract does not show that they do not regard the possessor of
such tract as the owner thereof.

3. LACHES—*party may be chargeable with laches without actual
notice of the facts.* While the general rule is that to charge a
party with *laches* in the assertion of an alleged right it is essen-
tial that he shall have knowledge of the facts upon which he bases
his claim, yet if the circumstances were such as should have in-
duced inquiry and the means of ascertaining the facts were read-
ily available had inquiry been made, a neglect to make such in-
quiry will charge the party with *laches,* the same as if he had
inquired and learned the facts.

4. SAME—*when parties are chargeable with laches.* Where all
the children of a deceased person know that their deeds from him
were not delivered to them until after the grantor's death and that
the deeds were executed only two days before his death they
should make some inquiry as to such delivery, and if the notary
who drew the deeds and gave them to the administrator after the
grantor's death is known to them and is easily accessible they are
chargeable with notice of the facts an inquiry to him would have
revealed, and they are barred, after a lapse of forty years, from
claiming a new division of the property based upon the ground
that they did not know the deeds were not well delivered.

WRIT OF ERROR to the Circuit Court of Piatt county; the Hon. W. G. COCHRAN, Judge, presiding.

Defendant in error Kathryn Ater filed her bill in the circuit court of Piatt county for the partition of one hundred and sixty acres of land described in the bill. The bill alleged that complainant was the widow of Thomas Ater, who died intestate November 16, 1906; that he left no children nor issue of any children, but left complainant, (his widow,) four sisters, and the descendants of one deceased sister and of four deceased brothers, as his only heirs-at-law. The bill alleged that complainant inherited one-half of said real estate, and that she was also entitled to homestead and dower in the whole of the premises. The bill further alleged that complainant's husband acquired title in fee simple to said one hundred and sixty acres of land by conveyance from his father in 1864, and a copy of the deed is set out in the bill. The deed is the long form then in use in conveyancing, and recites that in consideration of $400 and love and affection the grantor conveys to his son Thomas Ater, "and his children born unto him, if any shall be, but to no other person," the land described therein. The same words embraced in quotation marks are also inserted in the habendum clause. The surviving sisters of Thomas Ater and the representatives of a deceased brother and of a deceased sister were made parties, and the bill prayed for partition and the assignment of homestead and dower. The defendants answered the bill, denying that Thomas Ater was the owner of the fee in said land at the time of his death, and averred that he was unmarried when the deed was made to him by his father and that he took only a life estate by virtue of said deed; that the fee remained in the grantor and descended to his heirs as tenants in common, subject to being divested by the birth of a child or children to the said Thomas Ater. The answer denies that the complainant is entitled to the relief

prayed. The adult defendants to the original bill filed a cross-bill, alleging substantially the same facts set up in their answer. The cross-complainants alleged that Thomas Ater having died without ever having had any children born to him, they were the owners of the fee, and prayed partition thereof. Complainant in the original bill, Kathryn Ater, answered the cross-bill, denying that the cross-complainants were the owners of the fee in the said one hundred and sixty acres. Replications were filed and the cause referred to the master to take the proof. When the taking of the testimony was begun before the master the validity of the deed from James Ater to his son Thomas was not disputed. The only controversy then was as to what interest Thomas Ater took under the deed. Cross-complainants claimed he took only a life estate, and complainant in the original bill claimed he was the owner of the fee.

At the time of the death of James Ater he was the owner of a large amount of land. During his lifetime he made deeds purporting to convey ten hundred and forty acres of it to his nine children. The deeds purported to convey to each of the four sons one hundred and sixty acres of land and to each of the daughters eighty acres. The deeds were executed two days before the grantor's death but were not recorded until four days after his death. They were each, in form, the same as the deed to Thomas Ater before referred to. At the time this litigation was begun all four of the sons of James Ater and one of his daughters were dead.

During the taking of the testimony before the master, Mr. Pipher, a lawyer, testified that at the request of James Ater, on the 9th of February, 1864, at said James Ater's residence, he prepared deeds to each of the nine children, one of which was the deed to Thomas Ater; that they were signed and acknowledged at the time but were taken by the witness to his office for the purpose of putting his

notarial seal to them. The witness further testified that James Ater instructed him to retain the deeds until he should come or send an order for them; that a few days afterwards he learned of the death of James Ater, and having received no instructions from him as to what he should do with the deeds, he delivered them to Franklin Ater, the oldest son of James Ater. It does not appear who caused the deeds to be recorded, but after recording they were delivered to the nine children of James Ater.

After this testimony by the witness Pipher, complainant in the original bill filed an amended bill, in which she alleged that James Ater died on the 11th day of February, 1864, seized of ten hundred and forty acres of land, which is described; that he left surviving him Sabina Ater, his widow, and nine children; that by reason of his death his said children became seized of said land in fee simple, subject to the dower interest of the widow, and that she has since died. The bill further alleged that immediately after the death of James Ater said children divided said lands among themselves by mutual consent, without any written agreement, and that by virtue thereof each of them took and held the exclusive and adverse possession of the several tracts respectively assigned to each under claim of ownership, and managed, controlled and improved the same, paid the taxes thereon and received the rents and profits therefrom, without any acknowledgment by either of any right in the others to any control or management of or any interest in the said tract so taken and accepted by each individual, nor did either ever assert or claim any right to manage or control any other tract than that which he or she had so taken possession of, and that said possession had continued for a period of about forty years. The respective tracts of land which each of said children so took possession of are described, each of the sons taking one hundred and sixty acres and each of the daughters eighty acres, and the land in controversy in this suit is

described as having been so taken possession of by said Thomas Ater. It is alleged that thereby said Thomas Ater became seized of said land in fee simple; that in his life-time it was occupied by him and the complainant as their homestead and has been so occupied by her since his death; that being so seized of said land said Thomas Ater departed this life without issue, November 16, 1906. The names of the heirs are set out and partition is prayed as in the original bill. The bill also prays that the deeds from James Ater to his children, and especially the deed to Thomas Ater, be declared clouds upon the titles of the respective owners of said lands, and that said titles be perfected by the removal of said clouds therefrom. All the heirs of Thomas Ater are made defendants to the bill.

A guardian *ad litem* was appointed for the infant defendant, who filed his formal answer to the amended bill. A joint and several answer was also filed by Charity Smith, Jane Baker, Elizabeth Vent and Mary A. Ownby, the four surviving sisters of Thomas Ater, and by certain children of Martha Armsworth, the deceased sister. The answer admits the death and heirship of James Ater as set up in the amended bill and that upon his death his children became seized in fee of his lands, but it denies that immediately after his death his children divided his said lands among themselves, as alleged, without written agreement, and denies that any such division was made by mutual consent or in any other manner; denies that each of said children went into possession of the respective tracts of land under claim of ownership and managed and controlled the same as alleged in the amended bill. The answer avers that the said several children of said James Ater, deceased, believing that their said father had conveyed to each a life estate in the several tracts of land, entered into the possession of the same, recognizing and acknowledging the rights and interests of the other children in said several tracts as tenants in common by virtue of the said deeds,

but that said deeds were of no effect for the reason that they were never delivered, and that the defendants were never apprised of the non-delivery of said deeds until after the commencement of this suit, and that the possession of each of said children was of a life estate, only. The answer denies that the complainant is entitled to partition as prayed in the amended bill.

The defendants who joined in this answer, except Mary A. Ownby, also joined in an amended cross-bill, in which the ownership of the land and heirship of James Ater are again set up. It is also alleged that James Ater in his lifetime attempted to make conveyance of the several portions of his land to his children by the execution of the deeds above mentioned but that the said deeds were never delivered by said James Ater, and that after his death the administrator of his estate obtained possession of said deeds and caused the same to be recorded on the 15th of February, 1864; that they were afterwards received by the respective grantees named therein, and that each believed that said deeds were valid conveyances and solely by virtue thereof entered into possession of said land not knowing that they were tenants in common thereof, and that the cross-complainants were not informed and did not know there had been no delivery of said deeds until the commencement of this suit. It is alleged that Jane Baker, one of the daughters of James Ater, sold the tract of land supposed to have been conveyed to her by her father; that all the heirs joined in the conveyance in order to make a perfect title, it being the understanding that she owned only a life estate, and that said Jane Baker received the proceeds from the sale of said land, of which fact the court is requested to take notice in determining the rights of the parties. It is further alleged that each of the children of James Ater, deceased, who entered into the possession of the respective tracts of land, had received the rents and profits therefrom and made improvements thereon, and an

accounting is prayed for. It is also prayed that all of the said deeds executed by James Ater, except the one to Jane Baker, be set aside and declared of no effect, as clouds upon the title to said lands. Partition of said real estate among the heirs of James Ater is prayed for, and the names and respective interests of said heirs are set out.

The children and grandchild of Franklin Ater, deceased, and the children of Aaron Ater, deceased, filed a joint and separate answer to the amended cross-bill, in which it is denied that the lands of James Ater, deceased, are held in common by his heirs. It is admitted that James Ater and his wife executed certain deeds intended to divide his lands among his children in the manner set forth in the cross-bill; that said deeds were never delivered in the lifetime of the grantor, James Ater, but were afterwards delivered to his administrator and duly recorded and then delivered to the several parties to whom the lands were intended to be conveyed. The answer avers that a parol partition was had of the lands of James Ater, immediately after his death, among his heirs, and that adverse possession was taken pursuant thereto, substantially as alleged in the amended bill of Kathryn Ater, and that by reason thereof each of said parties became the owner in fee of his or her respective tract of land. The conveyance of the Jane Baker tract is admitted and that all the heirs joined therein, but it is averred that it was simply for the purpose of perfecting the title and not with the idea that the grantors, other than Mrs. Baker, were the owners of said premises, and that they did not claim or receive any of the proceeds of said sale. The answer denies that petitioners were not informed and did not know that there had been no delivery of the said deeds until the commencement of this suit, but avers that they had knowledge of that matter for twenty years last past, and that they are guilty of *laches,* and because of their long delay are not entitled to any relief on their amended cross-bill.

Kathryn Ater, original complainant; Mary A. Ater, widow of John S. Ater, deceased, and Mary A. Ownby and W. H. Ownby, her husband, filed answers to the amended cross-bill, to the same effect as the answer of the other defendants thereto. A guardian *ad litem* answered for the infant defendant, Ralph Dobson. Replications were filed and the cause was again referred to the master to take the proof. In March, 1909, he reported the evidence to the court, and after a trial before the court a decree was entered granting the relief prayed by complainant, Kathryn Ater, in her amended bill, and dismissing the amended cross-bill. The decree finds that said deeds executed by James Ater were never legally delivered and were of no effect, and are canceled and set aside as clouds upon the title to said lands; that after the death of James Ater each of his said children took and held the actual, open, notorious, exclusive and adverse possession of the said several tracts of land intended to be conveyed to each under claim of ownership, and by reason thereof had become the respective owners, in fee simple, of the lands so occupied. This writ of error is sued out to review that decree.

GEORGE B. GILLESPIE, C. F. MANSFIELD, and F. M. SHONKWILER, for plaintiffs in error.

HICKS & DOSS, and REED & REED, for defendants in error.

A. C. EDIE, guardian *ad litem* for Ralph Dobson.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

From the attitude the parties have finally assumed in this litigation, it appears that this suit has resolved itself into a controversy between three surviving daughters and the descendants of a deceased daughter of James Ater on

the one side, and the remaining surviving daughter and those claiming under the four deceased sons of James Ater on the other side.

It is conceded by all the parties to this suit that there was never a valid delivery of the deeds executed by James Ater to the grantees named therein. After the death of James Ater his oldest son, Franklin Ater, received the deeds from T. A. Pipher, in whose custody they had been since their execution, and they were afterwards caused to be recorded, presumably by Franklin Ater, although there is no direct proof to this effect. After the deeds were recorded, each of the various grantees named therein entered into the possession of the respective tract of land described in his or her deed. In what manner the deeds came into the possession of all the children does not appear. Mrs. Vent testified she received hers from her mother, and Mrs. Smith testified she received hers from her mother or brother, Franklin Ater.

Plaintiffs in error contend that the children of James Ater did not take possession of their respective tracts of land by' virtue of any parol agreement between themselves but took possession by virtue of the deeds made by their father; that they supposed the deeds to be valid, and understood them as conveying to each of said children a life estate and not the fee simple title. Upon this basis it is argued that Thomas Ater's possession of the land in controversy was not hostile, in its inception, to the claim of title of plaintiffs in error as remainder-men, and did not become hostile to them at any time during the life of Thomas Ater. It is not at all probable that in the absence of the deeds of James Ater to his children they would have agreed among themselves upon a partition of the lands such as was made by the deeds. Although said deeds were invalid as a conveyance of title, they were an expression of the desire of James Ater as to the particular tract and number of acres that he desired each of his children to

245—5

have of the ten hundred and forty acres of land purported to be conveyed to them by said deeds. If this division was agreed to, accepted and acquiesced in by the children of James Ater after his death, it would become valid and binding upon them and their heirs; and such agreement and acceptance need not be proven by express words of the parties, but may be inferred from the acts and conduct of the parties with reference to the respective tracts each took possession of. At the time of the death of James Ater, in 1864, two of his children,—a daughter and one son, Aaron,—were minors. The daughter attained her majority within a year after her father's death, and the son, Aaron, in 1870. Apparently the adult children took possession of the respective tracts of land purporting to have been conveyed to them by their father shortly after his death, and it is stipulated that at least as early as 1870 each of the children of James Ater took possession of the respective tracts of land purporting to have been conveyed to them by deeds from their father, and thereafter paid all taxes and insured the buildings on their respective tracts in their own names. There was no direct proof that Thomas Ater ever said or did anything indicating that he claimed only a life estate in the one hundred and sixty acres of land in controversy. There was testimony, of a general character, of two daughters of James Ater and two daughters of a deceased daughter of said James Ater, whose competency as witnesses was not objected to, that the children of said James Ater understood the deeds from their father to convey to them life estates in their respective tracts. A son-in-law of Franklin Ater testified that he learned his father-in-law had a life estate in his tract of land; that he thought he learned it from his father-in-law, but was not positive. The witness testified he never heard of any of the other brothers or sisters claiming any interest in Franklin Ater's one hundred and sixty acres. Franklin Ater died testate in June, 1905, and the witness was

appointed executor of his will.   John Kirby testified that in 1867 or 1868 he was breaking prairie for the Ater boys and boarding at the house of John Ater; that he understood from a conversation with John Ater that the land was conveyed by James Ater to his children for their lifetime and at their death was to go to their children.

Plaintiffs in error contend that the above testimony completely rebuts the finding in the decree that shortly after the death of James Ater each of his children "took and held actual, open, notorious, exclusive and adverse possession of the said several tracts so taken possession and charge of by each, respectively, as aforesaid, under a claim of ownership."   This might be true if the testimony above referred to were the only evidence in the record tending to show the character of the possession of the children of James Ater and the interest or estate in the respective tracts claimed to be owned by them.   In addition to the testimony referred to, the evidence shows that each of the children of James Ater, after taking possession of their respective tracts of land, exercised the same authority and control over it as if they owned it in fee, and that they, in fact, did claim to own it in fee.   Some, if not all, of said children erected permanent and valuable improvements on their respective tracts of land and insured the buildings in their own names, representing and stating to the insurance companies in their applications for insurance that they were owners in fee of the lands.   Thomas Ater in 1903 built a residence on the one hundred and sixty acres of land in controversy at a cost of from $2500 to $3000. He caused it to be insured September 17, 1903, and stated in his application for insurance that he owned the land in fee simple.   In 1879 Jane Baker and husband conveyed the eighty-acre tract Jane Baker had possessed since her father's death to James P. Ownby and received the entire consideration therefor.   All the other children of James Ater signed the deed with Jane Baker and husband, except

Franklin. Mrs. Smith and Mrs. Vent, daughters of James Ater and sisters of Jane Baker, testified they signed the deed with Jane Baker and husband in order to make the title clear; that Jane Baker was forty-seven years old and had no children, and the witnesses considered they might have an interest in the land and therefore joined in the deed to make the title good in the purchaser, but none of the children except Jane Baker claimed or received any part of the consideration for the land. They testified that Franklin Ater did not like Jane Baker's husband and said he wouldn't sign his children's rights away for that reason. Subsequently, and after the death of Mrs. Baker's husband, Franklin Ater executed a quit-claim deed to the purchaser. John S. Ater died in November, 1903. In May prior to his death he made a trust deed conveying the one hundred and sixty acres of land he was in possession of to a trustee, the rents and profits after the death of John S. Ater to be paid to his widow, if she survived him, during her lifetime, and at her death the trustee was authorized and directed to sell said one hundred and sixty acre tract and distribute the proceeds among the brothers and sisters and children of deceased brothers and sisters of said John S. Ater. Franklin Ater died testate in June, 1905, leaving children surviving him. He appears to have disposed of all his estate and property by his will. The will was offered in evidence on the trial but was objected to by plaintiffs in error as being incompetent and immaterial. It was agreed between the parties that the will had been duly admitted to probate, but the record does not show any ruling of the court on the objection to its admission in evidence and we do not find it in the record, and therefore do not know to whom the land was devised. Aaron Ater died intestate October 30, 1905, leaving several children surviving him. One of his daughters administered upon his estate, and testified her father resided on the one hundred and sixty acres of land described in the

deed of his father to him until his death; that during his lifetime he tiled the land, planted an orchard on it and built a barn and a seven-room two-story house thereon. He insured the buildings for $1400, and represented to the insurance company that he was the sole and unconditional owner in fee of the land. These indisputable facts tend to show that the four sons of James Ater did not claim possession as mere life tenants, but that they claimed to be owners in fee simple of the tracts of land they were, respectively, in possession of, and this testimony is inconsistent with the testimony of the witnesses referred to, that they understood that the children of James Ater claimed a life estate, only, in their respective tracts.

Plaintiffs in error contend that the action of the other children of James Ater in uniting with Jane Baker in the conveyance of her eighty-acre tract is an important circumstance showing they claimed an interest in the land. A parol partition, and possession taken thereunder, vests the equitable title, but the legal title remains in the person or persons it was in before the parol partition was made. Conveyances in such cases are necessary to vest the legal title. Upon the death of James Ater the legal title to the land vested in his children, and after parol partition between themselves they became severally vested with the equitable title to their respective tracts, but in order to make title to a purchaser from one of them it was necessary that all should join in the conveyance to him. This is the more reasonable explanation of why the brothers and sisters of Jane Baker signed the deed with her. Jane Baker was forty-seven years old and had no children, and her other brothers and sisters made no claim to any part of the consideration paid for the land, but permitted and consented to Jane Baker and husband receiving the entire price paid for it. Their signing the deed is not inconsistent with Jane Baker's claim of ownership in fee, and permitting her to receive the entire consideration for the conveyance would

seem to be a recognition of such ownership in her. If Franklin Ater, because of his dislike of Jane Baker's husband, refused for a time to join in the conveyance because he thought his children might have an interest in the land, his conduct in this respect was inconsistent with his act in disposing of his land by will. His possession and title were of the same nature and character as those of his sister, Jane Baker, and if he owned the fee in his land she must have owned the fee in hers. It is also worthy of note that while John S. Ater disposed of the fee in his one hundred and sixty acres by deed of trust executed in May, 1903, and died in November following, up to the time this litigation was begun the validity of the trust deed and the right of John S. Ater to dispose of the fee appears not to have been questioned. We are of opinion, therefore, that it cannot be said the evidence did not warrant the chancellor in finding that the possession of the several tracts by the respective parties was open, notorious, exclusive, adverse and under claim of ownership.

It is further contended by plaintiffs in error that whatever may have been the character of the possession and claim of title of the respective parties, it was based on the understanding and belief that it was acquired under the deeds made by James Ater without any knowledge that they were invalid because not delivered by or under authority of the grantor. They all knew that the deeds were never delivered to them until after the death of their father. Pipher testified he told Franklin Ater, at the time he delivered the deeds to him, what his father's instructions were at the time they were executed; that the deeds were not his, Pipher's; that he wanted to deliver them to somebody and that Franklin was the proper person to receive them. There is no proof Franklin Ater ever told anyone what Pipher said his instructions were from James Ater about the delivery of the deeds, but they were, very soon after Franklin Ater received them, recorded and de-

livered to the respective parties. Franklin Ater was the oldest son of James Ater and administered upon his father's estate.

Plaintiffs in error explain their delay in asserting the rights they now claim under their amended cross-bill, on the ground that they had no knowledge of the invalidity of the deeds made by James Ater until the testimony was being taken before the master after this litigation was begun; that prior to that time they had no knowledge that the deeds had never been delivered and believed them to be valid. It is not so alleged in the cross-bill, but it is argued in the brief of plaintiffs in error that Franklin Ater occupied a fiduciary relation toward his brothers and sisters and that they had a right to rely on the validity of the deeds, and that Franklin Ater was guilty of a fraud in not disclosing to them the circumstances under which the deeds were procured and delivered to them. One of the daughters, Mrs. Vent, testified she knew of the deeds being prepared by Mr. Pipher at the time and that he was to hold them until her father came or sent for them. Another daughter, Mrs. Smith, testified she knew of Mr. Pipher coming to her father's house and preparing some deeds but could not remember whether he took them away with him or not. All of the children knew the deeds were recorded after their father's death and that they received them after they were recorded, without any explanation of the authority by which they were recorded and delivered after the death of the grantor. They accepted them without question and took possession of their respective tracts of land.

While the general rule is, that to charge a party with *laches* in the assertion of an alleged right it is essential that he should have knowledge of the facts upon which he bases his claim, yet if the circumstances were such as should have induced inquiry, and the means of ascertaining the truth were readily available upon such inquiry but

the party neglects to make it, he will be chargeable with *laches* the same as if he had known the facts. The rule is the same where ignorance of the facts, or concealment of them by one whose duty it was to disclose them, is relied on to arrest the running of the Statute of Limitations. Upon this subject the Supreme Court of the United States, in *Wood* v. *Carpenter,* 101 U. S. 135, quoted with approval from *Kennedy* v. *Greene,* 3 Myl. & K. 722: "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact he shall be deemed conversant of it." In the same case the court also quoted from Angell on Limitations: "The presumption is, that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it." The same court said in *Johnston* v. *Standard Mining Co.* 148 U. S. 360: "The law is well settled that where the question of *laches* is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." "And where the question of *laches* is in issue, the plaintiff is also chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put a man of ordinary prudence upon inquiry." (18 Am. & Eng. Ency. of Law,—2d ed.—114.)

We are of opinion that the circumstances under which the deeds from James Ater to his children were delivered were of such character as to have reasonably imposed upon them the duty of inquiry. Mrs. Vent knew of the making of the deeds at the time and of her father's instructions to the draftsman, Mr. Pipher. Mrs. Smith knew of the

making of the deeds at the time they were made. All of them knew their father died two days after the deeds bore date and that they were not filed for record until after his death. Mr. Pipher, who prepared and took the acknowledgments of the deeds, lived near and was easily accessible to all of the parties. Inquiry could have been made of him without inconvenience. It apparently was not made, and now, after a lapse of more than forty years, a court of equity is asked by the amended cross-bill to partition the land among the heirs of James Ater, deceased, as intestate estate, without regard to the deeds or the character of the possession of the parties during that long period of years, and to require an accounting of rents and profits. It would be difficult, if not impossible, to preserve the equitable rights and interests of all the parties and do justice between them if a decree should be entered in accordance with the prayer of the cross-bill. This, alone, would not justify denying the cross-complainants' right to the relief prayed, but their delay in asserting their right for so long a period of years, during all of which time the means of knowledge of the facts were easily accessible and the circumstances were such as to put them on inquiry, places them in a position where they are not entitled to the relief prayed in a court of equity. "When the delay is of such a nature as to prevent substantial justice between the parties, the courts are ready to declare that the remedy sought is inequitable and must be refused." (18 Am. & Eng. Ency. of Law,—2d ed.—100.)

We are of opinion the decree in this case does substantial justice and that there is no error in the record that would justify its reversal. It is therefore affirmed.

*Decree affirmed.*