(No. 21291.—)

WALTER CRIMP *et al.* Defendants in Error, *vs.* THE FIRST UNION TRUST AND SAVINGS BANK, Exr., Plaintiff in Error.

*Opinion filed February 23, 1933—Rehearing denied April 13, 1933.*

94

WINSTON, STRAWN & SHAW, (JAMES H. CARTWRIGHT, THOMAS A. REYNOLDS, and CHARLES J. CALDERINI, of counsel,) for plaintiff in error.

IVOR JEFFREYS, for defendants in error.

Mr. JUSTICE JONES delivered the opinion of the court:

This cause is here on *certiorari.* On December 3, 1929, Walter E. Crimp, Alfred Crimp and Bessie Crimp Harvey (hereinafter called the claimants) filed a claim in the probate court of Cook county against the estate of Eugenia Crimp Bridge, deceased, who died testate January 20, 1929. The First Union Trust and Savings Bank was appointed executor of her will. She is hereinafter referred to as the testatrix and the executor as defendant. The claim is for money alleged to have been collected by decedent, as trustee for the claimants, under a trust agreement dated December 29, 1893. The agreement was made by the testatrix in her own right and as executrix of the estate of William G. Crimp, deceased, with Ezekiel Smith and Joseph

Eastman. Crimp was the father of the claimants and the former husband of the testatrix. The claim filed alleged that all knowledge of the trust agreement and of the moneys paid thereunder was fraudulently withheld and concealed from the claimants by the testatrix and no knowledge of the agreement or of moneys paid thereunder ever came to them, or any of them, until after the death of the testatrix. The probate court allowed the claim in the sum of $57,473.53. An appeal was taken to the circuit court of Cook county, where the cause was tried *de novo,* without a jury, resulting in a judgment in favor of the claimants for $31,516.74. The claimants appealed to the Appellate Court for the First District. The judgment of the circuit court was reversed and judgment was entered in the Appellate Court in favor of the claimants for the sum of $58,945.19 and costs.

William G. Crimp died testate in Chicago on November 14, 1893. He left him surviving Eugenia Crimp, his widow; the claimants, aged sixteen, twelve and ten years, respectively, his children by a former marriage, and three children by his marriage with Eugenia Crimp, aged three years, two years and three months, respectively. By his will he devised and bequeathed all his estate to his widow. She has since married John M. Bridge.

Crimp, Smith and Eastman were formerly partners in the firm of Smith, Crimp & Eastman, contracting plasterers. In the spring of 1893 the firm was dissolved and Crimp became associated with the McCormick Construction Company, which had a contract for the excavation of section 14 of the Chicago Sanitary District canal. The affairs of the McCormick Construction Company became badly involved. After Crimp's death his widow requested Smith to look after her interests pertaining to the company and its affairs. She informed him that her husband had made a will in which he left everything to her so that matters could be handled, and she was to provide for the

claimants. She also told him that her husband depended upon her honesty to see that they got what was right. As a result of Smith's investigation a suit was filed in the United States District Court by Eugenia Crimp against the McCormick Construction Company and R. P. McCormick. A receiver was appointed and the assets were sold at public auction to Smith & Eastman, who paid $8000 for the physical plant and $33,000 for the sanitary district contract. Prior to this sale Smith & Eastman entered into a written agreement with Mrs. Crimp in her own right and as executrix of the estate of her deceased husband, whereby she sold and assigned to them all her stock, securities, rights, and all her claims and demands against McCormick and the McCormick Construction Company. This contract was dated December 29, 1893, and is the basis of the claim here in litigation. By its terms Smith & Eastman agreed to bid at the sale of the assets of the McCormick Construction Company, and if successful, to carry out the contract with the sanitary district and pay Mrs. Crimp, as trustee, two-ninths of the net profits, not to exceed $28,000 and not less than $10,000, with interest at six per cent per annum, the $10,000 guaranty to be evidenced by a promissory note. Mrs. Crimp was to receive the interest from the note and apply it to the maintenance, education and necessary expenses of the claimants, keeping proper vouchers for such expenditures. When the principal was paid she was to keep and invest it in safe interest-bearing securities. A like provision applied to all other sums received by her under the agreement. The moneys so received were to be held by her in trust for the claimants and paid to them when they became of legal age and released all claims against their father's estate.

Smith & Eastman gave the testatrix their note for $10,000, and the interest thereon was paid each year until January, 1901, at which time the note was fully paid and canceled. In January, 1894, Eastman assigned to Patrick J.

Sexton all his interest in the agreement and in the assets purchased at the receiver's sale. Sexton and Smith thereupon entered into a co-partnership agreement for the purpose of carrying out the contract with the sanitary district. In 1901 Smith and Sexton entered into a contract whereby Sexton agreed to save Smith harmless from any liability under the trust agreement of December 29, 1893. Sexton died, and the testatrix on July 6, 1904, in her individual capacity, filed a claim in the probate court of Cook county against his estate for $18,000, being two-ninths of the profits alleged to have been derived from the sanitary district contract. The claim was allowed in the sum of $12,500 and payment was made to the testatrix. About three years prior to the filing of this claim the testatrix filed a bill in chancery against Smith, Eastman and Sexton for an accounting. She alleged that under the trust agreement her share of profits in sanitary district work was $18,000 and that it had not been paid to her by the defendants; that two of the minor children of her deceased husband had become of age and had each released to her all their rights arising out of the contract, and that the other child would become of age on the fifth day of January next and would then release to her all his interest in the contract. A copy of the trust agreement was attached to and made a part of the bill of complaint but no copy of any release was attached to the bill.

The circuit court admitted in evidence a certified copy of the bill of complaint solely on the question of the reasonableness of attorneys' fees, for which defendant was asking credit in the matter of the collection of the trust fund. Offers of counsel for defendant to introduce answers, demurrers and other files in the case were denied, on the ground that such files were irrelevant and immaterial. It is contended that such files would, if admitted in evidence, disclose a litigation which would necessarily bring notice to the claimants that the testatrix was asserting they had

released their interest in the trust fund to her, and that their failure to bring suit or otherwise enforce their rights thereto constitutes *laches* and bars them from a recovery in this proceeding. The allegations were self-serving, and the claimants, who were not parties to the suit, cannot be charged with knowledge of the contents of the pleadings. Defendant contends that the offered testimony refutes any claim of secrecy and concealment and was competent for that purpose. Its competency for such purpose was not presented to the trial court and will not be considered upon review. *Irwin* v. *Miller*, 23 Ill. 401.

Defendant makes the further contention that the claimants are guilty of *laches* in not asserting their claim to the $12,500 allowed by the probate court. This contention is based on the ground that the testatrix received said sum after the claimants had arrived at their majorities, that the trust relation was terminated at that time, and that they failed to institute suit until approximately twenty-five years thereafter. That the testatrix received $10,000 and all accrued interest on the note executed by Smith & Eastman, and also $12,500 on the claim allowed by the probate court, is admitted. There is no contention that she ever accounted to claimants for either of said sums or interest thereon. It is claimed by defendant's counsel that the claimants executed releases of all their interest in the trust fund, but there is no evidence in the record tending to support the contention except an entry on the books of testatrix's attorneys showing she paid them a fee for drafting a release from Walter Crimp. Nothing is shown as to the character of the release or whether it was ever signed and executed. It is also claimed that a letter dated April 2, 1929, signed by Alfred A. Crimp and addressed to the trust officer of the First Union Trust and Savings Bank, executor of the last will and testament of the testatrix, asking if the contents of the safety deposit box of the testatrix had been inspected, "and if so, have you located

a release which I signed in 1902," constitutes an admission on the part of Alfred that he had released his interest in the particular fund. There is no intimation of the nature of the release or of its contents. The evidence is wholly insufficient to justify the conclusion that the claimants ever released their interest in the trust fund or its accumulations. The testatrix left no books of account or other record showing that she had ever made any disbursements to the claimants or for their use and benefit.

The estate, of William G. Crimp at the time of his death consisted chiefly of a life insurance policy for $5000, the home in which he lived, several vacant lots in an undeveloped portion of Chicago, and his rights, as a partner in the McCormick Construction Company, in the sanitary district contract. After the collection of the moneys above mentioned by the testatrix as trustee she constructed several flat-buildings on the lots. When she died, the value placed upon her estate for inheritance tax purposes was $161,000. She left a will, by which she bequeathed $2000 to each of the claimants, provided they made no other claims against her estate. The will recited that in making such provisions she took into account the fact that she had theretofore expended considerable sums for their education, clothing and living expenses and had provided a home for them. All the rest and residue of her property was bequeathed to her own children, except $500 bequeathed to each of her grand-children.

It is urged that the trust was to terminate when the claimants arrived at their majority, and that inasmuch as the sum of $12,500 was not received by the testatrix until after the claimants had arrived at such age, the trust was no longer in existence, and therefore the testatrix did not receive it as trustee. We cannot see the force of this contention. The fact that the trustee did not make a complete and final settlement with the *cestuis que trustent* at the time they arrived at lawful age did not destroy the trust

or terminate its existence. If the fund actually belonged to the trust and had not been assigned or released to the trustee her duty to account to the beneficiaries for what she received was the same as if it had been paid to her during their infancy.

In support of plaintiff in error's contention that the claimants have been guilty of *laches* it is said that they must have known of the pendency of the suit filed by the testatrix in which she alleged she had received releases from the claimants. This is a mere assertion of a conclusion not supported by the evidence. There is not a particle of proof in the record to show that either of the claimants knew anything whatsoever about the existence of the trust until after the death of the testatrix. The man who drew the will of William G. Crimp and who acted as business adviser and counselor for the widow for many years thereafter never heard her mention it. None of the lawyers who represented her in the litigation ever mentioned the subject to the children. The neighbors and friends who were intimate and visited the household never heard the matter discussed or knew of the existence of the trust. It was not until after the testatrix's will was read and the provision requiring the claimants to forego making any further demand against her estate that they had any intimation of the existence of the trust agreement or that they had any interest in their father's estate. They then began a diligent search, and after much labor and time they discovered the original agreement in the custody of the Continental Illinois Bank and Trust Company. It was the duty of the testatrix, as trustee, to apprise her step-children of their rights under the instrument which created the trust. When she sought the help of her deceased husband's former partner, Smith, she told him of her arrangements with her husband and of her obligation to the step-children. Her failure to disclose the facts to the claimants cannot be used as a shield to protect her estate

against the rightful claims of the children whose interests were reposed in her keeping. No time will protect a fraud as long as it is concealed. This case is one in which fraud and concealment were expressly alleged, and the impediments to an earlier prosecution were fully shown by competent proof. There is no evidence in the record that any claimant had knowledge of the trust agreement prior to November, 1929. There can be no *laches* where there is no knowledge. Mere delay will not bar relief where the injured party is ignorant of the fraud and files his claim within a reasonable time after learning of it. (*Duncan* v. *Dazey*, 318 Ill. 500.) The duty to commence proceedings arises only upon discovery of the fraud. (*Bishop* v. *Thompson*, 196 Ill. 206.) The finding of the trial court on the question of *laches* is not against the manifest weight of the evidence.

Walter E. Crimp was a competent witness as to the facts occurring after the death of the testatrix, under the first exception of section 2 of chapter 51. Smith's Stat. 1931, p. 1473; *Vigus* v. *O'Bannon*, 118 Ill. 334.

As to the contention that there is no satisfactory evidence of the payment of interest on the $10,000 note, the testimony shows the testatrix collected $4200 as interest before the principal was paid. The Appellate Court correctly allowed that item. The charge of interest on the $12,500 collected by her was correct. The trust agreement imposed upon her the duty to invest the principal in interest-bearing securities. The testimony shows the funds were retained by her without the knowledge of the claimants. In such case she is liable for interest. Smith's Stat. 1931, chap. 74, sec. 2; *Currier* v. *Kretzinger*, 162 Ill. 511; *Duncan* v. *Dazey, supra.*

It is claimed that the testatrix should not be charged with interest on the $10,000 note because the record shows she expended at least that amount in the maintenance and education of the claimants in accordance with the trust

agreement. No testimony to that effect appears in the record. No book of account or receipt showing such expenses was introduced in evidence. There is no testimony to show the cost or reasonable charges for the service if rendered, and while it appears that the claimants lived with the testatrix for a time after the death of their father, it also appears that two of them, at least, were working and earning wages. The testatrix having received the interest, the burden was on defendant to make satisfactory and proper accounting of the money which came to her hands. (*Wylie* v. *Bushnell,* 277 Ill. 484.) Where there has been a negligent failure to keep trust accounts all presumptions will be against the trustee upon a settlement, obscurities and doubts being resolved adversely to him. *Bone* v. *Hayes,* 154 Cal. 759; *Dufford* v. *Smith,* 46 N. J. Eq. 216; *Fidelity and Deposit Co.* v. *Husbands,* 174 Ky. 200.

The circuit court allowed defendant a credit of $300 paid the law firm of Flower, Smith & Musgrave and $468.50 paid the firm of Marshall & Rabadow as attorneys' fees. The Appellate Court refused to make that allowance. It is contended that these fees were paid by the testatrix in connection with the collection of the $10,000 note, but there is no evidence in the record tending to show that the note was ever placed in the hands of any attorney for collection or that suit was ever brought on it. The only support the claim for allowance has is that the ledger sheet of Flower, Smith & Musgrave shows an account with "Mrs. Eugenia Crimp, trustee." In this account are the following charges:

"1900.
Jan. 18. To Services . . ..........................$300.00
 " To Marshall & Rabadow, services and exp. *re*
 Smith & Eastman........................ 468.50"

There is a receipt given Mrs. Crimp by Flower, Vroman & Musgrave, successors to Flower, Smith & Mus-

grave, for the payment of said fees. Under the rule above stated, the trustee is required to make clear proof of the necessity or apparent necessity of the expenditure of the trust fund for the protection of the estate. Defendant has wholly failed in this regard, and the claim for deduction on account of the payment of these fees cannot be sustained.

Defendant claims a further allowance for attorneys' fees of $2023.50 paid to Flower, Smith & Musgrave and $2000 paid to J. B. Langworthy. It is asserted that these fees were paid by the testatrix to said attorneys for legal services rendered in the collection of the $12,500 item. The record does not support this claim. The chancery proceedings which were instituted by the testatrix against Smith, Eastman and Sexton were brought by her in her individual capacity, and the bill alleged that the claimants had assigned all of their interest to her. Her position was hostile and adverse to the claimants and to the trust estate. Had she succeeded in her suit she would have defeated the beneficiaries of the trust. Under no equitable doctrine can the estate be allowed a deduction on account of payment of said attorneys' fees. For three years the testatrix attempted to collect the money for herself by means of that proceeding. When she failed to accomplish her purpose, she, as trustee, filed a claim in the probate court against the estate of Sexton and an adjustment was made without contest. The claim was allowed for $12,500 and immediately paid.

Upon a consideration of the whole record we are of the opinion that the judgment of the Appellate Court is correct, and it is accordingly affirmed.

*Judgment affirmed.*