## STANDARD OIL CO. OF COLORADO v. STANDARD OIL CO.*
### No. 984.

Circuit Court of Appeals, Tenth Circuit.
July 28, 1934.

C. E. Johnson, of Denver, Colo. (Swerer & Johnson, of Denver, Colo., on the brief), for appellant.

Henry McAllister, of Denver, Colo., for appellee.

*Writ of certiorari denied 55 S. Ct. 216, 79 L. Ed. ——.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

The Standard Oil Company, an Indiana corporation (hereinafter called plaintiff), brought this suit against the Standard Oil Company of Colorado (hereinafter called defendant) to enjoin defendant from using its present corporate name, or any other corporate name containing the words "Standard Oil Company," "Standard Oil," or "Standard," or any name so closely similar to the corporate name of plaintiff in phrase, sound, or appearance as to lead to confusion or uncertainty, and from using the word "Standard" in connection with the production, purchase, manufacture, or sale of petroleum, oil, or gas, or other products in the states in which plaintiff is qualified to do business.

From a decree as prayed for, defendant has appealed.

The facts as found by the trial court are these: Plaintiff was incorporated under the laws of the State of Indiana on June 18, 1889, and prior to 1914 had duly qualified to do business in North Dakota, South Dakota, Missouri, Illinois, Minnesota, Wisconsin, Michigan, Kansas, Oklahoma, and Wyoming. It duly qualified to do business in Colorado on May 15, 1916, in Iowa on April 27, 1921, and in Montana on February 21, 1930.

By its charter plaintiff is authorized to manufacture, transport, and sell products of crude petroleum, and to do all business necessary or convenient thereto; and to mine, drill for, produce, and purchase all kinds of oils, petroleum products and such other articles as are usually refined, bought or sold by dealers in oils or petroleum products, or are convenient or incident to its business; and to take out and acquire trademarks.

For many years plaintiff has been engaged in the purchasing and refining of crude petroleum, and in the manufacturing, distributing, and selling at wholesale and retail of more than 2200 kinds of petroleum products. In Indiana from the date of its incorporation, and in the other states above named from the respective dates of its qualification, except in Colorado and Wyoming, plaintiff has been engaged in its own name in the wholesaling and retailing of petroleum products in large quantities. In Colorado from about 1910 to 1929, and in Wyoming and Montana for many years past, many of plaintiff's products were sold and delivered by it in large quantities to Continental Oil Company, which in turn sold them throughout those states at both wholesale and retail. All of the products sold by plaintiff directly or through Continental Oil Company were delivered in or from containers bearing plaintiff's name and distinctive trade-marks adopted by plaintiff.

Prior to January 1, 1929, plaintiff acquired more than 99% of the capital stock of Midwest Refining Company. From that date until April, 1930, the Refining Company, as a subsidiary of plaintiff and so generally known among the trade, carried on the wholesaling and retailing of gasoline in Colorado, Wyoming, and Montana. During that period it operated about 25 bulk stations and 58 retail or service stations for the distributing, marketing, and selling of plaintiff's petroleum products in Colorado.

On April 1, 1930, plaintiff acquired the property, facilities, and business of the Refining Company in Colorado, and since that date plaintiff has engaged in its name in the distribution and sale in that state of petroleum products bearing its name and trademarks. At the time of the commencement of this suit, plaintiff maintained in Colorado 35 bulk stations from which its products were sold and distributed by means of cars and motor trucks in wholesale quantities to 203 dealers and ten tank car buyers, and 112 service stations through which its products were sold at retail. Plaintiff's business in Colorado has increased since the filing of the instant case, and it is one of the largest distributors and sellers of petroleum products in that state.

Plaintiff has owned and operated an oil refinery at Florence, Colorado, since 1917.

On February 17, 1923, plaintiff registered in Colorado, in conformity with its statutes, the trade-mark or trade-name "Standard" for "road oil, asphalt, candles, gasoline, refined oil, naptha, lubricating oils, greases, and all kinds of petroleum products and by-products" manufactured by it.

In the trade and among consumers of all kinds of petroleum products, in all the states above named, plaintiff's corporate name has been identified with its products, and the names "Standard," "Standard Oil," and "Standard Oil Company" have come to have a well-recognized secondary meaning, not only as designating the products of plaintiff, but connoting products of high and distinctive qualities. Such names had acquired

that secondary meaning long before the incorporation of defendant.

For more than ten years past, plaintiff has expended large sums of money in advertising its various products under the names "Standard Oil Company," "Standard Oil Products," and "Standard" throughout the states above named, and such corporate and trade names, and good-will have become of great value to plaintiff. Plaintiff has established a valuable reputation for itself and for its products, and it has become the largest distributor and seller of petroleum products in those states.

Plaintiff's corporate and trade names "Standard" and "Standard Oil" have been applied only to accurate and reliable measuring devices.

Plaintiff has purchased in its corporate name, in the states above named, large quantities of machinery, equipment, supplies and raw materials incident to the conduct of its business, and has acquired a valuable reputation for fair dealing, prompt payment, and financial responsibility.

On March 14, 1927, Michael Finnerty, John P. Finnerty, and S. H. Weber incorporated the defendant as the "Standard Oil of Colorado, Inc.," under the laws of Colorado. In its certificate of incorporation the objects of defendant were stated to be, among other things, the buying, leasing, acquiring of petroleum and petroleum lands; the development and operation thereof; the preparation for marketing, the refining and treating of petroleum and its products; and the buying, selling, producing, transporting, storing, and exporting of crude petroleum and its products; and the acquiring, holding, and disposing of patent rights and processes for the refining and treating of petroleum and its products.

By an amendment filed on May 23, 1930, defendant's objects and purposes were supplemented to include the constructing, operating, and maintaining of pipelines for the transporting of natural gas in Colorado and elsewhere; the dealing in natural gas; the building, operating, and maintaining of plants for the recovery of casinghead gasoline; and the buying, selling, and dealing in casinghead gas and gasoline.

Its original capital stock was fixed at $50,000 of the par value of $1.00 a share. By an amendment to its certificate filed on April 10, 1930, its capital stock was increased to 400,000 shares without par value. By a further amendment to its certificate filed on July 7, 1930, its capital stock was increased to one million shares without par value, and its corporate name was changed to "Standard Oil Company of Colorado."

The original certificate stated that the principal business of defendant would be conducted in Colorado and in such other states, territories, and foreign countries as its board of directors might select.

Defendant and its incorporators and promoters used the words "Standard Oil Company," "Standard Oil," and "Standard" in its corporate name, not in good faith, but for the purpose and with the intent of appropriating and pirating such names, and particularly the name of the plaintiff.

Defendant acquired no property and transacted no business until about July, 1929, when it acquired certain drilling rights on lands near Berthoud, Colorado. From then until September, 1930, it conducted operations thereon, and produced and sold some crude petroleum. It is not licensed to do business in any other state except Colorado.

In September, 1930, it commenced an active and vigorous campaign, through a professional stock-selling organization, for the selling of stock throughout the United States. It solicited purchasers for its stock by means of misleading prospectuses sent through the mail, telegrams, and long distance telephone calls. Through such mediums and by divers representations, it sold about 18,000 shares of its stock at $10.00 a share, of which $7.00 thereof was paid to its agents as commission, leaving the defendant but $3.00 a share. The prospectuses however stated that the entire amount received would be used for the expansion of defendant. During such stock-selling campaign many letters intended for the defendant, addressed to "Standard Oil Company" and "Standard Oil Company of Colorado," were received at the offices of plaintiff in Chicago and Denver, and in certain cases mail intended for the plaintiff, its officers, and employees was delivered to defendant's office at Denver. Plaintiff was subjected also to much annoyance occasioned by the belief of many persons throughout the United States, who had been solicited to purchase defendant's stock or who had purchased it, that defendant was connected with, or was under the auspices of, or sponsored by plaintiff. Such stock-selling campaign continued until shortly after the commencement of this suit in January, 1931.

The carrying out by defendant of the purposes and objects of its organization, and the sale of its speculative stock under its present corporate name, has resulted and will result in injury to plaintiff's business, good will, and corporate and trade names.

The incorporation and organization of defendant was without the knowledge, consent, or approval of plaintiff. Plaintiff had no knowledge of the existence of defendant until about November, 1929, and no information as to the character of the business being carried on by the defendant until September, 1930.

Defendant contends that plaintiff was guilty of laches, and that it should have been denied relief on that ground.

In July, 1930, defendant changed its corporate name from Standard Oil of Colorado, Inc., to Standard Oil Company of Colorado. It was not until the launching of its stock-selling campaign in September, 1930, that the injurious effects from the piracy of its name became evident to plaintiff. This suit was commenced in January, 1931.

█ Laches cannot be imputed to one who has been justifiably ignorant of the facts creating his cause of action; or, as it is sometimes stated, it is an essential element of laches that the party charged with it should have legal knowledge of the facts creating his cause of action. Note 1.[1]

Here the plaintiff acted with reasonable promptness after it acquired knowledge of the facts creating its cause of action.

█ Furthermore, mere delay is insufficient; it must result in prejudice to the party asserting laches. Note 2.[2]

The only prejudice alleged is that certain persons purchased stock of defendant because of its name. In our opinion that affords no justification for defendant's continuing its unlawful piracy of plaintiff's corporate and trade names. Requiring defendant to desist will not detract from the inherent value of its stock, and further deceiving of the public will be prevented.

Every other substantial question raised was decided adversely to defendant's contention in Standard Oil Co. of N. M. v. Standard Oil Co. of Cal. (C. C. A. 10) 56 F.(2d) 973, and R. H. Macy & Co. v. Colorado Clothing Mfg. Co. (C. C. A. 10) 68 F. (2d) 690. We adhere to the views there expressed.

█ Where a chancellor has considered conflicting evidence and has made his findings and decree thereon, they must be regarded as presumptively correct, and unless a serious mistake has been made in the consideration of the evidence or an obvious error has intervened in the application of the law, the decree should be permitted to stand. Fienup v. Kleinman (C. C. A. 8) 5 F.(2d) 137, 141; Thallmann v. Thomas (C. C. A. 8) 111 F. 277, 283; Bowmaster v. Carroll (C. C. A. 8) 23 F.(2d) 825, 828; Independent Oil Well C. Co. v. Halliburton (C. C. A. 10) 54 F.(2d) 900, 908; Nave-McCord Merc. Co. v. Ranney (C. C. A. 8) 29 F.(2d)

[1] Note 1.
Harney v. Montgomery, 29 Wyo. 362, 213 P. 378, 384; Meriwether Sand & Gravel Co. v. State, 181 Ark. 216, 26 S. W.(2d) 57, 59, 60; Waters v. Order of Holy Cross, 155 Md. 146, 142 A. 297, 301; Crimp v. First Union T. & S. Bank, 352 Ill. 93, 185 N. E. 179, 182; Nave-McCord Merc. Co. v. Ranney (C. C. A. 8) 29 F.(2d) 383, 391; Spiller v. St. Louis & S. F. R. Co. (C. C. A. 8) 14 F.(2d) 284, 288; Winget v. Rockwood (C. C. A. 8) 69 F.(2d) 326, 331, 332; Ater v. Smith, 245 Ill. 57, 91 N. E. 776, 19 Ann. Cas. 105; Plant v. Humphries, 66 W. Va. 88, 66 S. E. 94, 26 L. R A. (N. S.) 558.

Knowledge of facts and circumstances which would put a person of ordinary prudence on inquiry is, in the eyes of the law, equivalent to knowledge of all the facts which a reasonably diligent inquiry would disclose. Wood v. Carpenter, 101 U. S. 135, 141, 25 L. Ed. 807; Johnston v. Standard Min. Co., 148 U. S. 360, 370, 13 S. Ct. 585, 37 L. Ed. 480; Jewell v.

Trilby Mines Co. (C. C. A. 8) 229 F. 98, 102.

[2] Note 2.
United States v. Alex Dussel Iron Works (C. C. A. 5) 31 F.(2d) 535, 536; Wilkinson v. Livingston (C. C. A. 8) 45 F.(2d) 465, 469; Taylor v. Salt Creek Consol. O. Co. (C. C. A. 8) 285 F. 532, 538; Howard v. Howe (C. C. A. 7) 61 F. (2d) 577, 580; D. O. Haynes & Co. v. Druggists' Circular (C. C. A. 2) 32 F. (2d) 215, 217; Meyer v. Ritter (C. C. A. 8) 268 F. 937, 943; Columbian Nat. L. Ins. Co. v. Black (C. C. A. 10) 35 F.(2d) 571, 575, 576, 71 A. L. R. 128; Northern Pac. R. Co. v. Boyd, 228 U. S. 482, 509, 33 S. Ct. 554, 57 L. Ed. 931.

In United States v. Iron Works, supra, the court said: "Laches consists of two elements, inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay. Its existence depends upon the equities of the case, and not merely upon the lapse of time."

528

383, 389; Staley v. Dwyer (C. C. A. 8) 29 F.(2d) 982; Lewis v. Ingram (C. C. A. 10) 57 F.(2d) 463, 464; Clarke v. Hot Springs Electric L. & P. Co. (C. C. A. 10) 55 F.(2d) 612, 615; Youngblood v. Magnolia P. Co. (C. C. A. 10) 35 F.(2d) 578.

Here the findings are amply supported by the evidence, and no error was made in the application of the law.

The decree is affirmed.