(No. 25630.—

ELIAS FRIEDMAN *et al.* Appellees, *vs.* THE CITY OF CHICAGO *et al.* Appellants.

*Opinion filed October 11, 1940—Rehearing denied Dec. 4, 1940.*

SHAW, J., specially concurring.

BARNET HODES, Corporation Counsel, (WALTER V. SCHAEFER, and EDWARD J. KELLY, of counsel,) for appellants.

LEONARD C. MEAD, and HOWARD B. BRYANT, (TOLMAN & MEGAN, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants, the city of Chicago and its comptroller, have appealed from a judgment of the circuit court of Cook county awarding a writ of *mandamus* compelling them to accept from appellees certain special assessment bonds in payment of delinquent assessments levied against the properties of appellees. The validity of a statute is involved, hence the direct appeal.

No question of fact is involved, as the facts are stipulated. They are, that appellee Friedman owned certain real estate in the city of Chicago against which a special assessment payable in five annual installments, with interest at five per cent, was levied under the Local Improvement act. The fourth installment became due January 2, 1933, and was not paid. On March 30, 1935, the property was withdrawn from sale by the city at the collector's sale of delinquent property, in accordance with applicable statutes.

This appellee also owned a special assessment bond issued to anticipate the collection of the fourth installment of the assessment. On January 2 last past, he, through his agent, tendered this special assessment bond to the comptroller of the city and requested that it be accepted as full and complete satisfaction of the assessment against his property and that the comptroller either endorse upon the bond as part payment a notation of the payment of principal and interest due on the assessment against his property, or, in the alternative, that he cancel the bond and issue a new one for the balance remaining due after deducting the principal and the interest due on the assessment installment. This the comptroller refused to do. The bond was for an amount larger than the installment.

Appellee Gittere was likewise the owner of real property against which certain special assessments had been levied, payable in five installments with interest at five per cent. The fourth installment of this assessment became due January 2, 1934. It was not paid and, on August 12, 1935, the property was forfeited to the State for non-payment of the assessment. Gittere also was the owner of a bond issued to anticipate the collection of that installment of the assessment. On December 2, 1939, he tendered his special assessment bond to the city comptroller and requested him to accept the bond—larger in amount than the installment—as full and complete satisfaction of the fourth installment of the assessment against his property and to either endorse as credit upon the bond the payment of principal and interest due upon that installment of the assessment, or, in the alternative, that the bond be canceled and a new one issued for the balance remaining due after crediting the principal and interest of the assessment. This the comptroller likewise refused to do and these proceedings ensued.

Appellees contend that they have a right to this writ of *mandamus* by reason of section 89 of the Local Improvement act, as amended in 1939. Appellants say that if the

amendment be construed to apply to special assessment bonds issued prior to July 12, 1939, when the amendment went into effect, the amendment violates the due process and contract clauses of sections 2 and 14 of article 2 of our constitution and section 10 of article 1 thereof and likewise the fourteenth amendment, to the constitution of the United States. The trial court found that the 1939 amendment of section 89 applied to the bonds issued prior to July 12, 1939; that it did not violate the constitutional provisions referred to; that the tenders of bonds by appellees in payment of those assessments were legal, and it was the duty of the comptroller to accept such tenders and either endorse payment in proper amounts on each of the bonds or cancel the bonds and issue new ones in their stead for the remaining unpaid balance. The writ of *mandamus* was issued accordingly.

The question first to be considered here is whether the amendment to section 89, in force July 12, 1939, applies to bonds issued prior to its enactment, and, if so, second, whether it is open to the constitutional weakness complained of. Prior to the amendment of 1939, section 89 of the Local Improvement act, (Ill. Rev. Stat. 1937, chap. 24, par. 795, p. 547,) provided as follows: "Any property owner may pay his assessment, wholly or in part, with the bonds or vouchers issued under this act on account of such assessment, applying, however, the bonds and vouchers of each series only to the payment of the installments to which they relate. In making such payments, such vouchers and bonds shall be taken at their par value and interest accrued to the date of making such payment. All vouchers and bonds received in payment of such assessment shall be canceled by the officer receiving the same, as of the date of their receipt, and deposited with the treasurer of the said town or village issuing the same." In 1939 this section was amended, (Laws of 1939, pp. 382, 383,) to read as follows: "Any property owner, or his agent, may pay his

assessment wholly or in part, either before or after the same is due, and whether or not the assessment has been withdrawn from collection or the property assessed has been sold to any municipality or forfeited to the State for the non-payment of such assessment, with the bonds or vouchers issued under this act on account of such assessment applying, however, the bonds and vouchers of each series only to the payment of the installments to which they relate. In making such payments, such vouchers and bonds shall be taken at their par value and interest accrued to the date of making such payment. All vouchers and bonds received in payment of such assessment where the entire amount equals or is less than the assessment, shall be canceled by the officer receiving the same, as of the date of their receipt, and deposited with the treasurer of the said town or village or the city comptroller of the city issuing the same. Provided, however, that when the amount of the assessment is less than that of the bond or voucher either an indorsement shall be made charging such bond or voucher with the amount thereof used in the payment of such assessment and such bond or voucher shall be returned to the person making such payment or the bond or voucher be canceled and a new bond or voucher be issued for the balance due and surrendered to the person making such payment. Any such indorsement on any such bond or voucher shall be made by writing or stamping across the face thereof the words 'payments upon this bond (or voucher) are listed upon the back'."

The bond held by each of these appellees was for more than the amount of the installment of assessment due against his property and was issued prior to the amendment of 1939. It will be noted that section 89, at the time of the issuance of these bonds, required that all vouchers and bonds received in payment of such assessment be canceled by the officer receiving the same as of the date of their receipt and deposited with the treasurer of said town or village

issuing the same. Appellees argue that under section 89, as originally enacted, bondholders owning property against which an assessment had been laid, could pay an installment of the same with special assessment bonds, using all of the bond or part of any bond therefor, and, if the latter, have the payment endorsed on the bond, and that the amendment merely clarified the procedure permissible under the original act. Whether this is true depends upon the language used. There is nothing in the original section 89 to indicate that a *pro tanto* cancellation was permitted but the language is that the bond shall be canceled and deposited with the municipality issuing it. Appellees cite no authorities to sustain their contention that the meaning of the word "cancellation" includes a *pro tanto* cancellation. Nor do they offer an acceptable construction of the requirement that the canceled bond be deposited with the treasurer. To cancel is to nullify, declare null and void; to set at naught the provisions of the instrument canceled and to declare them null and void. (*Noesen* v. *Erkenswick*, 298 Ill. 231; *McDonald* v. *Loomis*, 233 Mich. 174, 206 N. W. 348; *Whedon* v. *Lancaster County*, 80 Neb. 682, 114 N. W. 1102.) Cancellation of any form of contract necessarily includes a waiver of all rights under it by the parties.

Legislative enactments are, in the absence of express language otherwise declaring, construed as prospective and not retrospective. They will not be given retrospective operation unless the language of the act is so clear as to admit of no other construction. (*Rothschild* v. *Village of Calumet Park*, 350 Ill. 330; *O'Brien* v. *Chicago City Railway Co.* 305 id. 244; *Dunne* v. *County of Rock Island*, 283 id. 628.) There is nothing in the amendment to section 89 which indicates an intent on the part of the General Assembly that it shall operate retrospectively, and unless it can be said that the rights here claimed by appellees were such as they had under the original section 89, the amendment is not applicable to their bonds. The test as to whether

this would be so is whether the amendment to section 89 gives any new rights. In other words, would these appellees have been entitled to a writ of *mandamus* under the original section 89? It is a matter so well settled as to need no citation of authorities, that one seeking a writ of *mandamus* must show a clear right to the writ, and whether appellees have shown such right under section 89, as amended, depends upon whether that amendment is but a mere restatement or clarification of the provisions of the original section so that no new rights are accorded.

It will be seen that under the amendment the bonds or vouchers which are received in payment, canceled and deposited by the city comptroller, are those where the entire amount thereof is less than the assessment. No such provision appears in the original section 89. The amendment also provides that where the amount of the assessment is less than the bond or voucher the bondholder is entitled to either an endorsement of the payment on the bond or the issuance of a new bond. If the former, the bond is not deposited with the municipality issuing it, but is to be returned to the one making the payment. If the latter, a new bond is issued for the balance. Clearly these are new rights and amount to more than a mere explanation of the original section. It is upon this provision of section 89, as amended, that appellees must prevail in this case, if at all; a provision which, as we have seen, did not appear in the original section; and quite aside from appellants' contention that it creates a change in the relationship and rights of other bondholders holding bonds arising against the same installment, and so violates their contractual rights, it must be said that such amendment gives to the bondholder to which it applies, rights and privileges not enjoyed under the original section.

Under the Local Improvement act in this State the proceeds of special assessments are trust funds for the payment of the bonds issued for the cost of an improvement

and a bondholder whose bonds are past due is entitled, in equity, to have his *pro rata* share of the installment that has been collected paid to him with interest. (*Rothschild v. Village of Calumet Park, supra.*) Had the act under which these bonds were issued provided for such *pro tanto* cancellation of the bonds, other bondholders could make no complaint, as the act as it existed constituted a part of the contract when the latter was issued. However, in considering whether this amendment can be construed to operate retrospectively and so apply to bonds issued prior to its enactment, it seems quite clear that the amendment affords additional rights to the bondholder who wishes to turn in his bond in payment of an installment of a special assessment against his property. In addition, the act, as amended, gives to the bondholder the right to a credit or a reissuance of a bond for the balance of his bond in cases where the property has been forfeited to the State. This is also a right not given under the original section. This being so, rights not existing at the time appellees' bonds were issued cannot be asserted under the amendment. We are of the opinion that the amendment to section 89 does not apply to bonds issued prior to its enactment and that, under the original section 89, appellees are not entitled to the *mandamus* writ here sought. Under the view herein expressed, it becomes unnecessary to determine the constitutional questions raised.

The circuit court erred in issuing the writ of *mandamus* and its judgment is reversed.     *Judgment reversed.*

Mr. JUSTICE SHAW, specially concurring: I agree with the result reached but not with all the reasoning in this opinion.