## FIDELITY TRUST CO. v. VILLAGE OF STICKNEY.
### No. 7805.

Circuit Court of Appeals, Seventh Circuit.
May 11, 1942.

Rehearing Denied July 16, 1942.

508

Joseph Lustfield, of Chicago, Ill., for appellant.

Theo. C. Diller, of Chicago, Ill. (Lord, Bissell & Kadyk, of Chicago, Ill., of counsel), for appellee.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiff, a resident of Pennsylvania, is the owner as trustee of five bonds, each for the principal sum of $1,000 of Series H and a like amount and number of Series I, issued by the defendant in anticipation of the collection of assessments authorized for the improvement of the streets of the Village of Stickney, Illinois. Series H contained thirty-five bonds of $1,000 each and Series I thirty bonds of $1,000 each. The bonds and interest were in default. The plaintiff brought suit, alleging that the defendant had collected the assessments; that the assessments so collected were a trust fund for the payment of the bonds; that the defendant had commingled the assessments collected with its funds, had used the collected funds for its own purposes, and had lost the same by depositing in banks that subsequently failed, and that the funds were otherwise misapplied by the defendant. An accounting and an injunction were prayed for.

The evidence did not show that there was any appropriation of the collected assessments to pay the general obligations of the defendant. Neither was there any evidence that the funds were lost in closed banks. The general allegation of the complaint that funds collected "have been otherwise misapplied by the defendant" is sufficient averment to support the evidence adduced in the case, so as to avoid the contention that there was a variance between the allegations of the complaint and the proof.

The evidence showed that in each Series, H and I, six bonds had been received by the collector and cancelled. The matter was handled in two ways. First, Hammeda and Swobodka, who were not property owners whose property was liable for assessment, would buy a bond at very considerable discount. They would then turn the bond over to the village collector, whose duty it was to collect the installments under the assessment, with the understanding with the collector that the property owners designated by Hammeda and Swobodka could come in and pay a sum less than the amount of the installment due and receive a receipt in full for the installment. The collector kept track of the payments, and when a thousand dollars of installments had been liquidated, he cancelled the bond and the money that he had collected was turned over to Hammeda and Swobodka, who made a profit. The collector received no part of the profit but he did receive some "presents" from Hammeda and Swobodka.

By the second method employed, Hammeda and Swobodka entered into an arrangement with the collector, which enabled them to carry out the following practice. Hammeda and Swobodka, having purchased the special assessment bonds, delivered these bonds to the collector. Hammeda and Swobodka then contacted various property owners whose property was subject to the payment of the special assessments and agreed with such property owners that upon payment to Hammeda and Swobodka of such sums as the latter were willing to accept, Hammeda and Swobodka would secure for the property owners receipts showing payment in full of the various installments of the assessments against their property. Hammeda and Swobodka would then present to the collector the bills for the special assessments against the property of the owners who had made the payments to them. After marking the bills paid in full, the collector would deliver to

the village treasurer as cancelled a sufficient amount of bonds belonging to Hammeda and Swobodka to equal the full amount of the installments of the assessments covered by the receipted bills. Under this method, no money came into the hands of the village collector or anyone else for the village.

The court below found that these transactions were unauthorized by the statute. It held that the village had in effect collected the bonds in cash, and held the village liable to the plaintiff for its five-thirty-fifths part of the transaction on the Series H bonds and five-thirtieths part on the Series I bonds.

The questions presented are whether the transactions of receipting the bonds of the non-property owners, Hammeda and Swobodka, in the manner above indicated, were authorized, and if they were not, then was the village liable for the unauthorized acts of the village collector and to be charged with having collected the cash? The court below held these transactions were unauthorized and the village was liable as if the bonds had been collected in full in cash, and gave judgment for the plaintiff's proportionate amount of the

bonds, with interest and other relief. In the footnote, we have set out the statute that was in force at the time the bonds were issued and the transactions had, and the statute as amended in 1939, with the amendments indicated in italics.[1] That the amended statute has no application and cannot aid the defendant has been held by the Supreme Court of Illinois, for the reason that the bonds were issued prior to its enactment. Friedman v. City of Chicago, 374 Ill. 545, 30 N.E.2d 36, 40.

In that case, there were two property owners who each owed an installment under an assessment for public improvements, to anticipate the payment of which bonds had been issued prior to the date the statute was amended in 1939. Each of them owned one of the bonds, the face value of which was in excess of the installment each one owed. Each property owner presented his bond in payment of the installment and in accordance with the provision of the amended Section 89, demanded the satisfaction of the installment pro tanto, as against the bond, which was for a greater amount, and demanded that the bond be immediately cancelled and another bond for the balance due issued, or the payment be endorsed on the face of the bond and

---

[1] "§ 89. Any property owner may pay his assessment, wholly or in part, with the bonds or vouchers issued under this act on account of such assessment, applying, however, the bonds and vouchers of each series only to the payment of the installments to which they relate. In making such payments, such vouchers and bonds shall be taken at their par value and interest accrued to the date of making such payment. All vouchers and bonds received in payment of such assessments shall be canceled by the officer receiving the same, as of the date of their receipt, and deposited with the treasurer of the said town or village issuing the same." Laws 1897, p. 102, § 89, Smith-Hurd Stats. c. 24, § 84—89 note.

As amended by act approved July 13, 1939 Laws 1939, p. 382, § 1:

"Payment of assessment with bonds or vouchers. Any property owner, *or his agent*, may pay his assessment wholly or in part, *either before or after the same is due, and whether or not the assessment has been withdrawn from collection or the property assessed has been sold to any municipality or forfeited to the State for the non-payment of such assessment*, with the bonds or vouchers issued under this Act on account of such assessment, applying, however, the bonds

and vouchers of each series only to the payment of the installments to which they relate. In making such payments, such vouchers and bonds shall be taken at their par value and interest accrued to the date of making such payment. All vouchers and bonds received in payment of such assessment *where the entire amount equals or is less than the assessment* shall be cancelled by the officer receiving the same, as of the date of their receipt, and deposited with the treasurer of the said town or village *or the City Comptroller of the City* issuing the same. *Provided however, that when the amount of the assessment is less than that of the bond or voucher either an indorsement shall be made charging such bond or voucher with the amount thereof used in the payment of such assessment and such bond or voucher shall be returned to the person making such payment or the bond or voucher be cancelled and a new bond or voucher be issued for the balance due and surrendered to the person making such payment.*

"*Any such endorsement on any such bond or voucher shall be made by writing or stamping across the face thereof the words 'Payments upon this bond (or voucher) are listed upon the back.'*" (Italics indicate amendments.)

the bond returned to the property owner. The collector refused to recognize the right of the property owners thus to proceed. The property owners brought mandamus proceedings against the collector. The Circuit Court granted mandamus and the Supreme Court reversed. The Supreme Court said: "We are of the opinion that the amendment to section 89 does not apply to bonds issued prior to its enactment and that, under the original section 89, appellees are not entitled to the mandamus writ here sought."

In other words, the property owners had no right under either the original Section 89 or the amended section. On the authority of this case, and for the further reason that it does not appear that the bonds were bonds of the property owners but it appears that they were the bonds of Hammeda and Swobodka, who do not appear to be property owners, we hold that the methods followed by the collector of the Village of Stickney were not authorized by the statute.

What was the liability of the village for the unauthorized handling of these transactions? In the first method, the village collector received money. How much does not appear in the record. He received the amount Hammeda and Swobodka told him to collect as against the bond or bonds handled under this method. This amount, as the master found, was probably about seventy-five per cent of the face value of the bonds.

As to the second method, no money was received by the collector of the village. Hammeda and Swobodka had received the money in an amount undisclosed, but sufficient to satisfy Hammeda and Swobodka, who turned over to the village collector the bond or bonds for cancellation.

It has been clearly and repeatedly held by the courts of Illinois that money collected by the officers of a municipality in payment of special assessments levied for improvements constitutes a trust fund. People ex rel. Anderson v. Village of Bradley, 367 Ill. 301, 11 N.E.2d 415; Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N.E. 337; Flanagan v. City of Chicago, 311 Ill.App. 135, 155, 35 N.E.2d 545; Viehweg v. City of Mount Olive, 298 Ill.App. 412, 19 N.E.2d 211; Siefker v. City, etc., 297 Ill. App. 113, 17 N.E.2d 368; Wells v. Village of Wilmette, 193 Ill.App. 30. See also Village of Brookfield v. Pentis, 7 Cir., 101 F.2d 516.

It seems clear to us that under the so-called first method by which money was collected by the collector of the village, the village is liable for the amount of money the collector received. This constituted a trust fund, for the integrity of which the village was unquestionably liable.

As for the balance which it did not collect, although it was its duty to collect it, the village is not liable. It could not be held its duty to preserve as a trust fund that which it had never possessed. Conway v. City of Chicago, 237 Ill. 128, 136, 86 N. E. 619.

We come now to the second method, by which no money came into the hands of the village collector, and in which case Hammeda and Swobodka, the owners of the bond or bonds, had collected the money from the property owners in such amount as satisfied them and had then turned over the bond or bonds to the collector for cancellation. Under this method, no money came into the hands of the village collector. The trust fund theory could not apply because no fund was collected. The village collector had been guilty of an illegal act but the village, for the collector's default, neglect or mistake in the performance of his duty, cannot be held liable. This was clearly held in Conway v. City of Chicago, 237 Ill. 128, 138, 139, 86 N.E. 619, 622. This case states the rule that the liability of a municipality arising out of an assessment such as the one involved here is "limited to the amount of the special assessments actually collected" for the improvements.

In the Conway case, the city officials, acting under an erroneous view of the law, granted rebates to certain property owners. The city issued so-called abatement certificates to certain property owners and delivered these certificates to the collecting officer to be credited on the assessment owed by these property owners. The certificates were to be delivered finally to the city as so much money collected.

In holding that the city was not liable for the amount of money represented by the certificates, the court said: "Through a misapprehension as to the legal basis upon which the special assessment should have been levied, these rebates were left with the taxpayers. If appellant is required to

pay appellee these rebates, the effect of it will be to establish a general liability against the city for the mere neglect, default, or mistake of its officers in regard to the levying and collecting of a special assessment. It is true that appellant had no legal right to make such rebates, and all orders and proceedings purporting to authorize such rebates were null and void. * * * Appellee's remedy, in so far as the amount of these rebates is concerned, is by mandamus to compel the performance of whatever legal duties appellant is under in connection with the collection of these rebates from the taxpayers. It is suggested that difficulties arising out of the lapse of time will prevent the collection of the original assessment or the levying of a supplemental assessment covering these rebates. *However this may be, we are not inclined to extend the general liability of a municipality for special assessments beyond that which results from a failure to pay over money actually collected by it.* These rebates never having come into the hands of the city in cash, it is not liable in an action of assumpsit for them, on the theory that by the exercise of due diligence in the discharge of its legal duties it ought to have collected them." (Latter italics ours.)

We therefore hold on the authority of the Conway case that as to those bonds delivered by Hammeda and Swobodka to the village collector for cancellation and against which no money was received by the collector, the village is not liable.

■ Before the trial the plaintiff filed under Rule 36(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, a request for an admission of facts. The request asked the defendant to admit that a number of bonds listed were cancelled on the dates set forth opposite the bonds listed. This the defendant admitted. But the plaintiff next asked the defendant to admit that none of these bonds were used by property owners to pay assessments. This the defendant refused to admit. This was no part of the plaintiff's prima facie case. The plaintiff made its case when it showed ownership of the bonds, maturity, collections made by the village, demand for payment and no payment. People v. Village of Bradley, 367 Ill. 301, 11 N.E.2d 415; Rothschild v. Village of Calumet Park, 350 Ill. 330, 342, 183 N.E. 337; Allbee v. City of Aurora, 306 Ill.App. 457, 28 N.E.2d 742.

After the plaintiff had made its prima facie case, it was then up to the defendant to explain what collections were made, if any, and what it did with them. If the plaintiff undertook such proof it was unnecessary and was an attempt to anticipate and forestall a position it apprehended the defendant would take.

■ In any event, the admission requested was not one of facts but a conclusion of law. In fact, it was one of the questions of law most strenuously litigated, namely, whether the conduct of the village collector in his dealings with Hammeda and Swobodka by the cancellation of bonds amounted to a payment of the property owners of their assessments with the bonds. Under the plaintiff's construction of the statute, it was unauthorized. Under the defendant's construction, it was authorized. To ask the defendant to admit that property owners had not used bonds to pay their assessments and that the cancelled bonds were not paid and cancelled, was not a request for facts but a conclusion of law, and that was the heart of the case. The facts constituting the transactions were not called for. Since the request was not one for facts but of law and if facts had been requested, it would have been for facts the plaintiff was not bound to produce to make its prima facie case, we think the costs taxed for $1,365.25, alleged to be expenses incurred by the plaintiff in making the proof, were not properly taxed.

■ Another part of the court's judgment is challenged. The court in paragraphs 4, 5, 6, 7 and 8 has assumed to direct the village as to how it shall collect, report, and handle assessments in the future, stating that it should provide in its budget and tax levy to discharge the money judgment entered by the court.

We think the village's duties are defined by the laws of Illinois and it is unseemly for a federal court of equity to undertake to supervise the performance of the legal duties of the village upon an assumption, not sustained by any finding in the record, that the village will not do its duty. First National Bank v. Albright, 208 U.S. 548, 28 S.Ct. 349, 52 L.Ed. 614; Waite v. Macy, 246 U.S. 606, 609, 38 S.Ct. 395, 62 L.Ed. 892; Hawks v. Hamill, 288 U.S. 52, 53 S. Ct. 240, 77 L.Ed. 610; Massachusetts State Grange v. Benton, 272 U.S. 525, 47 S.Ct. 189, 71 L.Ed. 387; Stork Restaurant Corp. v. McCampbell, D.C., 55 F.2d 687. See

also Beal v. Missouri Pacific R. R. Corp., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577; Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; City of Chicago v. Fieldcrest Dairies, Inc., 62 S.Ct. 986, 86 L.Ed. ——, decided April 27, 1942.

Likewise, we think it a gratuitous assumption that the village will not pay the money judgment the court had adjudged against it. Such an assumption, in the absence of some evidence to support it, is contrary to law. The presumption of the law is that public officials will do their duty. Gard v. Dolbeare, 223 Ill.App. 496, 500; Utah Power & L. Co. v. Pfost, 286 U. S. 165, 190, 52 S.Ct. 548, 76 L.Ed. 1038.

There is nothing in this record to overcome this presumption. We are therefore of the opinion that the record does not warrant the provisions of paragraphs 4, 5, 6, 7 and 8 of the District Court's judgment.

The judgment of the District Court is reversed, with instructions to proceed in accordance with this opinion.