### FIRST NAT. BANK & TRUST CO. OF RACINE v. VILLAGE OF SKOKIE
(two cases).

#### Nos. 10172, 10206.

United States Court of Appeals
Seventh Circuit.

June 27, 1951.

Rehearing Denied Aug. 31, 1951.

See also 7 Cir., 173 F.2d 1.

H. A. Brundage, Charles F. Short, Jr., and P. Sveinbjorn Johnson, Chicago, Ill., for First Nat. Bank & Trust Co. of Racine.

Emmett J. McCarthy, Joseph J. Witry, George R. Lyon, Charles C. Wooster and Henry L. Wells, Chicago, Ill., for Village of Skokie.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

The Village of Skokie, Illinois, (then known as Niles Center), provided by ordinance for the construction of a sewer system in said village pursuant to an Illinois

statute entitled "An Act concerning local improvements." Smith-Hurd Ill.Rev.Stats. 1933, c. 24, § 698 et seq. The sewer project was known as Local Improvement 60610. Provision was made to levy a special assessment against certain designated real estate to pay for the cost of the sewer. Provision was also made for the issuance of special assessment bonds to anticipate the collection of such special assessments. Each bond, by the terms thereof, was payable from the collection of the installments to which it related. The bonds bore interest at the rate of 6% per annum, evidenced by interest coupons attached thereto. The interest was likewise payable only from the collection of statute entitled "An Act concerning local interest on the installment to which the bond related.

The Special Assessment Roll was confirmed by the County Court on December 29, 1928, in the following amounts: first installment, $76,708.13; second to fifteenth installments, $73,906.55 each. The total assessment was $1,111,399.83. The first installment was due and payable on December 31, 1930, and the fifteenth installment on December 31, 1944.

The bonds issued were divided into Series 2 to 14 inclusive, Series 2 being used in anticipation of installment No. 3, and the bonds of Series 4 to 14 for the collection of the subsequent installments. Plaintiff is the owner of $159,000 in principal amount of said bonds, some being in each of Series 2 to 14 inclusive, except Series 4 and 5. The village had made certain payments to plaintiff, leaving a balance due of approximately $132,500, plus interest.

Count 1 of the amended complaint seeks, among other relief, an accounting, a money decree, and an injunction restraining commingling and diversion of funds. In the alternative, Count 2 asked for reinstatement on the village records of all illegally extinguished liens of Special Assessment 60610. On September 14, 1943, the district court ordered the Village of Skokie to render an accounting from January 10, 1934. On October 30, 1944, the court referred the cause to Hon. Warren H. Orr, a special master who, after extended hearings, filed a report containing detailed findings of fact and conclusions of law, pursuant to which he recommended that judgment be entered in favor of the plaintiff under Count 1 for $159,450.53, plus $21,244.57 costs, and $26,403.40 as master's fees and stenographic charges.

Defendant filed various objections to the master's report, all of which were sustained by the district court except one. The court overruled all of plaintiff's objections to said report, and directed that judgment be entered against the defendant in the sum of $5,000, with costs assessed equally, excluding $19,680.62 for auditor's fees, which were charged entirely against the plaintiff. The court dismissed Count 2 for want of equity.

At the first hearing before the master, counsel for defendant stated, "Well, in connection with making proof and simplifying it, I want to state for the record that the defendant admits that they owe the sum of $5,000.00 to the plaintiffs here and are ready to pay it. That is represented in their share of the collections made applicable to the bonds and coupons in question." The award of $5,000 to the plaintiff by the district court was based upon this concession.

The special master ruled that an accounting was necessary to determine whether $5,000 or a greater sum was due to plaintiff. At successive stages of the hearing defendant submitted three statements of account, all of which were found by the master to be incorrect and incomplete, and same were withdrawn by defendant. On April 3, 1946, the village asked for a continuance in order to prepare a correct statement. The master granted the continuance saying, " * * * this is the last continuance I will grant for this audit. * * * If they can't get a correct one in four audits, we cannot allow them to keep making other audits." The fourth audit was filed on June 5, 1946. The master found that this audit likewise was incomplete and unsatisfactory, and he then gave leave to plaintiff to re-open its case in order to have a complete audit prepared. This was done by Raymond S. Blunt, Sr., a certified public accountant of many years

experience in municipal accounting, who had audited more than 2,000 special assessment funds.

The village prepared its tax bills in duplicate from the Assessment Record kept in the Special Assessment Roll and Land Lot Ledger. When a person paid his taxes, both the original and duplicate bill were stamped, "Received Payment," together with the date and the name of the village collector. Each receipted bill showed the amount paid, the installment paid, and the lot number on which the lien was being extinguished. In addition the assessment against each lot was stated, together with the dates to which the interest was computed, and the amount thereof.

The original receipted bill was given to the taxpayer, and the duplicate was retained by the village. This duplicate was the first record made in the collector's office of the payment of the tax it represented. The next record was the collector's daily deposit record to the treasurer's account, reflecting the transactions of that day. The third record was when the auditor posted the payment to the Special Assessment Roll or Land Lot Ledger. The fourth record was the monthly collector's report to the village treasurer. All information relative to collection of taxes by the village collector stemmed from the duplicate original receipted tax bills in his office.

There is substantial evidence to sustain the master's findings that after the filing of this lawsuit and prior to the time when Mr. Blunt began his audit, officials or employees of the defendant altered the Special Assessment Roll or Land Lot Ledger by stamping that record, "Paid with Village Securities"; also that the duplicate original receipted tax bills were altered by stamping upon them, "Paid with Village Securities." In making the audit, employees of Mr. Blunt searched the village vaults and finally assembled 24,350 duplicate original receipted tax bills. All of these were stamped with the words, "Received Payment," together with the date paid and the name of the village collector. The master found that 4,202 of said tax

bills had been altered by the addition of the stamped phrase, "Paid with Village Securities." On a large number of the altered bills, in addition to the stamped date of payment, there was a pencilled date interlined above the stamped date. The pencil notation was always a later date than the stamped date, and the lapse of time between the two dates ranged from a few days to an extreme of more than four years.

The validity of the levy, the issuance of the bonds and interest coupons, and plaintiff's ownership of the bonds described in the complaint are not in issue. Furthermore, it is well established Illinois law that money collected by the officials of a municipality in payment of special assessments levied for municipal improvements constitutes a trust fund. People ex rel. Anderson v. Village of Bradley, 367 Ill. 301, 11 N.E.2d 415; Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N.E. 337; Flanagan v. City of Chicago, 311 Ill. App. 135, 35 N.E.2d 545; Viehweg v. City of Mt. Olive, 298 Ill.App. 412, 19 N.E.2d 211. The critical questions are: Did the defendant village collect some of the assessments levied under Local Improvement 60610 in cash, and if so how much? It is admitted that plaintiff would be entitled to receive its proportionate share of any cash thus collected. Fidelity Trust Co. v. Village of Stickney, 7 Cir., 129 F.2d 506.

The special master found that from January 11, 1934, to April 30, 1947, defendant had collected in cash for the benefit of bondholders of Special Assessment 60610, principal in the amount of $326,897.73 and $152,724.22 of interest; that such collections are applicable to bonds payable from the third to fifteenth installments inclusive; that the par value of bonds of Special Assessment 60610 still outstanding on April 30, 1947, entitled to a pro rata share of said collections, was $508,300.00; and that accrued interest thereon from January 11, 1934, to April 30, 1947, was $349,612.23. After deducting sums theretofore paid to plaintiff, the special master computed that there was due to plaintiff on April 30, 1947, principal in the amount of $91,178.83 and $68,271.70 of interest, and recom-

mended that a judgment against the defendant be entered for $159,450.53 and costs.

The district court held that the defendant village presented an accurate accounting for all of its cash collections since the date of the 1934 decree. However, we think the overwhelming weight of the evidence demonstrates the contrary to be true. We find ourselves in agreement with the findings of the special master: "The Collector's records and books in the Village of Skokie are a confused array of errors, corrections, omissions and substitutions, * * * certain actions of the defendant village officials * * * closely borders upon fraud."

The village treasurer's records of the 24,350 duplicate original receipted tax bills showed these transactions as cash receipts, yet 4,202 of them were altered by stamping them, "Paid with Village Securities." Many of these were additionally altered by the interlineation of a penciled date above the stamped date. In all cases where the duplicate original receipted tax bills showed two dates the payment was reported by the collector on the later date. However, interest on each of said tax installments was computed only to the earlier date, showing payment probably was made then. The village records do not disclose what happened to the collections made on the earlier dates.

Defendant's records treated $4,222.18 of principal collections and $3,294.44 of interest collections of the second installment as a liquidation transaction, by use of village securities, but this could not be true as no bonds had been issued in anticipation of the collection of the second installment.

Under Sec. 89 of the Cities and Villages Act, Ch. 24, Sec. 795 of the 1933 Ill. Smith-Hurd Rev.Stats., "Any property owner may pay his assessment, wholly or in part, with the bonds or vouchers issued under this act on account of such assessment, applying, however, the bonds and vouchers of each series only to the payment of the installments to which they relate. * * * All vouchers and bonds received in payment of such assessment shall be canceled by the officer receiving the same, as of the date of their receipt, * * *." Defendant's accounting showed that a large number of coupons from unrelated installments were received in payment of the interest on installments to which they were not applicable. It is apparent that they were not received upon the date when the original and duplicate original receipted tax bills were stamped, "Received Payment."

The evidence amply sustains the master's finding: "From the foregoing it appears that the alteration of the original records was made to conform to transactions within the Collector's office occurring after the date on which the collection was made. * * *"

The same is true as to the finding: "* * * In the four different audits and statements the Village, through its agents and officials, failed to set forth in any complete or understanding manner how much money it had actually collected. * * * It was only from the audit directed by the Special Master, after the four unsuccessful and incomplete attempts of the Village to render a proper accounting, that an audit was produced at great expense by the plaintiff to show, as far as possible, what the Village officials had done or failed to do in the premises. * * *"

And also: "But the Collector failed to record in any other official record what he received in payment, whether cash or securities, and what he did with the payment. It does appear that the Village officials went back to the duplicate original receipted tax bills and altered them by interlineation with a pencil date above the stamped date of payment and did the same thing to the special assessment roll; and then on a subsequent date, from several days to as much as 4 years later, a report was made to the Treasurer that cash and securities had been received on the later date. * * *"

The Village of Skokie is and at all relevant times was the trustee of the funds resulting from collections under Special Assessment 60610, charged with all attending fiduciary duties, including the obligation to spread the assessment, collect it and make

disbursements authorized by law. Fidelity Trust Co. v. Village of Stickney, supra, 129 F.2d at page 510; Village of Brookfield v. Pentis, 7 Cir., 101 F.2d 516, 520; Rothschild v. Village of Calumet Park, supra, 350 Ill. at page 341, 183 N.E. at page 341. It was the further duty of the Village of Skokie, as such trustee, to keep accurate accounts during the entire course of the trusteeship. Wylie v. Bushnell, 277 Ill. 484, 491, 115 N.E. 618; Lehman v. Rothbarth, 159 Ill. 270, 280, 42 N.E. 777.

■ The plaintiff established a prima facie case by showing ownership of the bonds, maturity, collections made by the village, demand for payment, and no payment. Fidelity Trust Co. v. Village of Stickney, supra, 129 F.2d at page 511. The burden was then upon the village to explain what collections were made and what was done with them. Fidelity Trust Co. v. Village of Stickney, supra, 129 F.2d at page 511.

■■ It affirmatively appears that the Village of Skokie negligently failed to keep proper records, and to explain the errors and omissions found therein, with the result that all doubts must be resolved against it. Fricke v. Weber, 6 Cir., 145 F.2d 737, 739. The rule in Illinois, as elsewhere, is stated in Crimp v. First Union Trust & Savings Bank, 352 Ill. 93, 102, 185 N.E. 179, 183: "* * * Where there has been a negligent failure to keep trust accounts, all presumptions will be against the trustee upon a settlement; obscurities and doubts being resolved adversely to him. * * *"

The district court stated that Accountant Blunt's testimony together with the exhibits prepared by him from defendant's records were entitled to no weight as constituting both "presumption" and "opinion." By giving no weight to Blunt's testimony, the district court held the findings of the special master were not sustained by the evidence.

■ We perceive no infirmity in the Blunt testimony and exhibits, and are of the opinion that they were properly received in evidence by the special master. United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Freeman, 7 Cir., 167 F.2d 786, 791; United States v. Mortimer, 2 Cir., 118 F.2d 266, 269; Augustine v. Bowles, 9 Cir., 149 F.2d 93, 96.

■ It was the duty of the district court to accept the master's findings of fact unless clearly erroneous. Rule 53(e)(2), Federal Rules of Civil Procedure, 28 U.S.C.A. The master saw and heard the witnesses. He lived with this case for almost four years. He gave the defendant every reasonable opportunity to explain its confused, inaccurate and altered records. The findings of the master are not clearly erroneous; it is our opinion that they are correct, and that the defendant's objections to the master's report should have been overruled, and judgment entered in favor of the plaintiff in the sum of $159,450.53, plus costs.

■ We think it was an abuse of discretion to disallow the fees of the Blunt audit as an item of plaintiff's costs, and to include as items of costs to be borne by the plaintiff, one-half of the fees and expenses of the special master and one-half of the charge of the court reporter. In our opinion the full amount of such items should be assessed as costs in favor of the plaintiff and against the defendant, less such credits thereon as defendant may have paid. The Blunt audit and the other expenses were made necessary in large part by reason of the confused and inadequate condition of the defendant's records. The situation presented is an appropriate one for the exercise of the "power of federal courts in equity suits to allow counsel fees and other expenses entailed by the litigation not included in the ordinary taxable costs recognized by statute." Sprague v. Ticonic National Bank, 307 U.S. 161, 164, 59 S.Ct. 777, 779, 83 L.Ed. 1184. The allowance to the plaintiff in this case of the expenses involved in the audit and the master's fees and disbursements, plus the charge of the court reporter, is dictated "for dominating reasons of justice." Sprague v. Ticonic National Bank, supra, 307 U.S. at page 167, 59 S.Ct. at page 780.

Plaintiff also appealed from the determination by the master, sustained by the district court, that the accounting should not be computed for any period prior to January 10, 1934. In Cause No. 13,388 in Chancery in the United States District Court for the Northern District of Illinois, plaintiff herein was one of the plaintiffs who sued the defendant, who is the defendant herein, on the basis of its ownership of some of the bonds and interest coupons described in the complaint in the case at bar. A judgment in plaintiff's favor was entered on January 10, 1934, for $6,242.80 and costs. In computing the amount due to the plaintiff in the present case, the special master included only sums collected after the date of the former judgment.

Plaintiff argues that the Blunt accounting showed that a much larger sum than $6,242.80 was due it on January 10, 1934, and that plaintiff should not be bound by the judgment entered on that date because the decree was procured by fraud. However, we think the judgment of January 10, 1934, is res judicata and that the record does not disclose such fraud on or before that date as will relieve plaintiff from the bar of that judgment. As far as can be ascertained from the record before us, the alteration of the village records referred to occurred after that date. The district court was, therefore, correct in sustaining the master in limiting recovery to sums collected by the village after January 10, 1934.

In Appeal No. 10206, defendant appeals from the judgment of $5,000 which the district court awarded to the plaintiff, based on the concession made by defendant's counsel at the opening hearing before the master. In as much as the defendant's liability to plaintiff has been determined by the special master upon the basis of an accounting, and such basis and the amount of liability are approved by this court, the judgment for $5,000 must be vacated and set aside. In view of our disposition of the entire controversy, we do not pass upon the contentions presented with respect to this phase of the litigation. We likewise do not reach the issues raised by the allegations of Count 2 of the complaint which was pleaded in the alternative.

The judgment of the district court is reversed and remanded with directions to enter judgment consistent with this opinion, plaintiff to recover its costs in this court.

Reversed.