**Joyce Sampson, Appellant, v. The Village of Stickney, a Municipal Corporation, William Loeffler, William J. Svolba, Charles Lejsek, Charles Hadac, Walter J. Jicha, Frank Dus, Jerry Cibulka, Joseph Blaha and Emil Kovarik, Appellees.**

Gen. No. 48,114.

First District, Third Division.

March 22, 1961.

Rehearing denied April 14, 1961.

Joseph B. Gilbert, of Chicago, for appellant.

Byron S. Matthews and Thomas A. Matthews, of Chicago, for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal was taken by plaintiff from a decree of the Superior Court of Cook County entered March 1, 1960 sustaining certain exceptions to the master's report and entering judgment for plaintiff in the sum of $11,179.50, together with master's fees and costs. The master had taken an accounting following a reference made to him of plaintiff's petition, as amended, for an accounting pursuant to the decree previously entered in this suit on October 20, 1937.

The case grew out of the purchase by one Lenora Schnitzer of certain special assessment bonds issued by the Village of Stickney to anticipate the collection of special assessment No. 6 levied for improvements in said village. She had bonds in series B, E, F, G, H and I. The face value of the bonds was $49,500. The bonds had interest coupons attached thereto representing the annual interest on each of said bonds at the rate of six per cent per annum. There is no question

15

that the village complied with all the statutory requirements in order to validly issue the said bonds. A suit to enforce payment by the village of sums allegedly collected by it on the assessment and for an accounting was filed by Lenora Schnitzer in 1937 in the Superior Court of Cook County. A decree was entered finding that as of April 30, 1937 she was entitled on her bonds to a pro rata amount of the collections made, which sum the court found to be $4,470.20 on account of principal, and $1,492.56 on account of interest, a total of $5,962.76, and the village was ordered to pay the said sum to her. The decree further provided: "The defendant Village of Stickney shall pay annually, commencing on May 1, 1938 and on the first day of May in each year thereafter, the proportion of any moneys collected and applicable on said bonds and interest coupons until they have been paid in toto until further order of court; that plaintiff is granted leave to examine the books and records of said village relating to said assessment No. 6; that jurisdiction is hereby reserved for the purpose of enforcing the payment of the above mentioned sums and any future sums that may be applicable on said bonds and interest coupons and to carry out the other provisions of this decree . . . ." No further payment was made by the defendant village on account of the principal or interest on said special assessment bonds of the plaintiff, nor was any accounting ever made by the defendant of any amounts collected by it on said bonds and coupons after April 30, 1937.

By successive assignments Joyce Sampson became the owner of the bonds and interest coupons. On March 9, 1954 a petition for an accounting pursuant to the October 20, 1937 decree against the Village of Stickney was filed. The petition admits that in accordance with the provisions of the decree payments of $4,470.20 on account of the principal of the bonds

16

and $1,492.56 as interest were made, and alleges that no other payments were made and that the sum of $45,029.80 was due on the bonds in addition to the interest thereon. It also alleges that the village has made no accounting since the entry of the said decree, and that it has since the entry of the decree commingled money collected on the special assessment with the general funds of the village and has used such funds, properly due on the bonds, for its general corporate purposes. The petition prays for an accounting to determine the extent of the commingling, misapplication or misappropriation of the funds by the village, and for an order upon the village to pay to the plaintiff what shall appear on such accounting to be due to the plaintiff from the defendant.

The Village of Stickney filed an answer to plaintiff's petition, in which it denied that it had collected any money applicable to plaintiff's bonds and interest coupons. It later filed an amended answer, again denying that it had made any collections on the assessments levied by special assessment No. 6, and asserting that it has in its answers to interrogatories theretofore filed made a full account of the moneys collected which are affected by these proceedings. The amended answer was verified by Joseph Lustfield, attorney for the village.

The plaintiff propounded interrogatories to the village at three different times. The answers of the village to the interrogatories are contradictory and inconsistent. Among other things the village states that the amounts collected by the village collector on principal and interest on the bonds and special assessment No. 6 are not available for an answer; that the village collector did not report his collections to the Village of Stickney, and that the records are not available for any payments made by the county treasurer to the Village of Stickney. Again it says that the village

17

does not have on hand the amount collected on account of special assessment No. 6, and that such funds were paid out on account of other bonds and interest coupons of the said special assessment. Again it says that the liens created by the said special assessment of the Village of Stickney were foreclosed in July of 1949 and that no moneys have been received by the Village of Stickney from any source on the special assessment bonds owned by plaintiff from July of 1949 to date. Again it says that the judgment liens were not foreclosed but were sold at a public auction on September 1, 1949 at the village hall in the Village of Stickney, and that notice was given by publication in the Stickney Life, published by Cicero Life, of Cicero, Illinois. (The plaintiff at the hearing introduced a notice published in The National Corporation Reporter.) The defendant states that all the delinquent assessments at that sale, held in accordance with an ordinance passed on August 9, 1949, were sold to the Suburban Bond and Service Company of Riverside, Illinois for $1,448.00, that the moneys received were deposited with the village collector of the Village of Stickney, and that proper certificates of assignment were issued and are presumably in the possession of the Suburban Bond and Service Company. Again it states that some of the money collected by the Village of Stickney on account of the special assessment was applied to bonds and interest coupons and some of it was paid for collection fees etc. and the balance deposited in the account of the village, and to that answer were attached two documents in the handwriting of the then attorney for the village, Joseph Lustfield, which documents were later introduced in evidence before the master by the plaintiff. The exhibits indicated, among other things, that the village collected from April 30, 1937 to July 1, 1949 $4,367.71 in principal and $1,289.75 in interest, which were ap-

18

plicable to the bonds and coupons owned by the plaintiff.

The amended answer to the petition and the answers and amended answers to the interrogatories were signed and verified by Joseph Lustfield, attorney for the village.

The plaintiff also by order of court filed a notice on the defendant to admit certain facts. In that notice plaintiff set out a schedule purporting to be a true and correct statement of the pro rata payments due on some of the special assessment No. 6 bonds owned by the plaintiff on account of principal which the village had collected up to July 1, 1949 and from which no payments were made to the plaintiff. In the schedule are set forth certain amounts allegedly collected by the village as determined from a decree entered in the Superior Court July 1, 1953 in the case of Chalberg v. Village of Stickney (to which we will refer later), and which decree sets out the principal collected by the village prorated on special assessment No. 6 bonds owned by Chalberg in series B, E, F, G and I. (The amount found due on those bonds in the decree was paid and a satisfaction of judgment was entered.) The decree was marked "approved" in the handwriting of Joseph Lustfield, attorney for the Village of Stickney, and under the word "approved" appears the signature of said Joseph Lustfield. In answer to the notice to admit facts the Village of Stickney denied that the schedule setting forth the pro rata payments due on some of the bonds owned by the plaintiff on account of principal collected by the village up to July 1, 1949 on the special assessment is a true and correct statement of the principal due. The village admits that the amounts shown in the schedule as principal collected to July 1, 1949 were established with reference to certain bonds in the Chalberg decree, and the village further admits that the

19

prorated amounts shown in the schedule under the column marked "Principal Paid" are the amounts paid by the village to the plaintiff's assignor with respect to the numbered bonds listed therein pursuant to the decree of October 20, 1937, but says all the bonds listed in the decree are not included.

By order of court the matter was referred to a master in chancery to take an accounting and to hear the issues raised by the petition and the answer. The master held hearings, and on October 7, 1959 filed his report, which included his finding of facts. In his findings he set out the decree of October 20, 1937, the payment of $5,962.76 thereunder, and found that no further payments as provided for in that decree were ever made on the said bonds or interest coupons by the Village of Stickney. The master further found from the "interrogatories and evidence offered" that from April 30, 1938 to July 1, 1949 the village had admittedly collected the following amounts applicable to the plaintiff's bonds and coupons: principal $4,367.71, interest $1,289.75, making a total of $5,657.46, which sum the defendant misappropriated and converted to its own use. From the present accounting of the village it was found that there was collected on the bonds concerned, for each $1,000 bond, the following:

| Series | Collected and paid | Collected but unpaid | Total for $1,000 bond |
|--------|--------------------|----------------------|------------------------|
| B | $ 42.40 | $ 25.63 | $ 68.03 |
| E | 200.70 | 90.48 | 291.18 |
| F | 125.20 | 94.02 | 219.22 |
| G | 39.20 | 90.80 | 130.00 |
| H | 130.02 | 68.65 | 198.67 |
| I | | 114.10 | 114.10 |

The master further found that in the Chalberg case, which involved special assessment No. 6 bonds in the

20

series held by the plaintiff here except one (series H), the decree established that the village actually collected to July 1, 1949 the following amounts on each $1,000 bond, which amounts are not in accord with the records of the village:

| | Principal Collected per $1,000.00 Bond | |
| | As found by the | As acknowledged in |
| Series | Chalberg decree | the case at bar |
|--------|----------------------------------------|--------------------|
| B | $854.00 | $ 68.03 |
| E | 615.00 | 291.18 |
| F | 563.00 | 219.22 |
| G | 557.00 | 130.00 |
| I | 564.00 | 114.10 |

The master found that no appeal was taken from the Chalberg decree and it was approved by the village attorney on its face. He further found that the "pretended sale and assignment of judgment liens made by Defendant in August 1949 did not absolve the Village of Stickney from its duty to collect and account to Plaintiff"; that because of the unexplained discrepancies between the amounts now admitted by the village as having been collected on special assessment No. 6 and the findings in the Chalberg decree all doubts would be resolved against the village; that the village by the sale had attempted a conversion of trust property; and that consequently the amount actually due the plaintiff is the face value of the principal and interest coupons of her bonds after deducting the amount paid pursuant to the decree of October 20, 1937, which balance was found to be $58,957.24. The master surcharged defendant with interest at five per cent per annum from the date the bonds were due, and recommended that the court enter judgment in favor of plaintiff and against the village in the sum of $118,-509.77.

21

The Village of Stickney filed objections to the master's report, setting up, among other things, that the master should have found that the sale in August 1949 was a valid sale, that the village is liable to the plaintiff only for the proportionate share on special assessments collected by it prior to August 1949 out of which said bonds are payable, and that the master should have found that the village has accounted to the plaintiff for all sums due her. The master overruled all the objections. The objections stood as exceptions, and the trial court on March 1, 1960 entered a decree in which the court found that out of the amounts which the village received prior to July 1, 1949 on special assessment No. 6 the pro rata amounts due on the bonds held by the plaintiff are $4,367.71 as principal and $1,289.75 as interest, in all the sum of $5,657.46. The court further found that the defendant has not paid that sum to the plaintiff nor has it complied with the terms of the decree of October 20, 1937, and that the said village has converted said collections to its own use. The court ordered that the village be surcharged with interest at the rate of five per cent per annum on the collections made by the village from 1938 to 1949, and computed such interest at $5,522.04. The court sustained the objections to the master's report except with reference to the surcharge of interest as previously stated, and entered judgment against the village for $11,179.50, plus interest at the rate of five per cent from the date of judgment, and also entered judgment for master's fees.

The master based his finding concerning the amount for which judgment should be entered in favor of the plaintiff and against the village upon the theory that the village was a trustee and that any conduct on its part in violation of its trusteeship, either before or after the collection of assessments due, could be treated as such a breach of its duties as trustee as

would justify the holder of the bonds recovering the face value of the same together with the interest coupons, plus a surcharge of interest of five per cent from their date of maturity. The master takes a very dubious view of the sale of the special assessment liens by the village. In fact he calls it a pretended sale. Under the statute in effect at that time the village had a right to foreclose or sell the lien of the special assessments. Ill. Rev. Stat., chap. 24, par. 84–56. The statute did not require that notice of the sale be given to the bondholders, nor did it require notice by publication. This section of the statute was amended in 1957 (too late to apply to the sale herein considered) by paragraph 84–56a, which set forth specific requirements for the sale of special assessments and provided that before the sale and assignment of special assessment liens the municipality must file a petition in the county court and obtain an order of the county court authorizing such sale. At the time of the filing of the petition the municipality must give notice by publication, as well as by 10 days' notice by mail, to the owners of the special assessment bonds and vouchers, and after the court has by order authorized the sale the municipality can sell at public sale, after first giving notice by publication of the time and place of such sale. Had the liens been foreclosed instead of being sold there was no statutory requirement that the bondholders be made parties. Village of Lansing v. Sundstrom, 379 Ill. 121, 39 N.E.2d 987; People v. Anderson, 380 Ill. 158, 43 N.E.2d 997. A sale of such liens may be valid even though the moneys received through such sale are less than the amount due thereunder. People ex rel. Drobnick v. City of Waukegan, 1 Ill.2d 456, 116 N.E.2d 365; Bromberg v. Kulp, 398 Ill. 449, 76 N.E.2d 45; Village of Palatine v. Palanois Estates, Inc., 319 Ill. App. 474, 49 N.E.2d 655. In her brief the plaintiff disavows any thought that she

23

asks that the sale be declared void. The plaintiff argues that the conduct of the village in conducting the sale was a violation of the duty it owed as a trustee holding the uncollected bonds for the benefit of the plaintiff. Among other things she points out that the village conducted the sale without sufficient notice, though she admits that notice was not required by statute, that assessment liens approximating $1,000,000 were sold for $1,448.00, and that there is no indication as to whether that money was ever received by the village. In fact, the only report of the sale appearing in the village files is a letter of Joseph Lustfield with reference thereto. The plaintiff further argues that as a result of such breach of trust on the part of the village a court of equity can properly enter a judgment involving the general funds of the village for the face value of the bonds together with interest coupons and a surcharge.

Both the plaintiff and the master have misconstrued the law with reference to the duties of a municipality toward holders of bonds issued under special assessments. The rule is that when a municipality issues special assessment bonds it becomes a trustee of the funds resulting from the collection under the special assessments, and is charged with all attending fiduciary duties. First Nat. Bank & Trust Co. v. Village of Skokie, 190 F.2d 791 (7th Cir.) ; Fidelity Trust Co. v. Village of Stickney, 129 F.2d 506; Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N. E. 337; Village of Lansing v. Sundstrom, supra. It is the further duty of the municipality as trustee to keep accurate accounts during the entire course of the trusteeship. Wylie v. Bushnell, 277 Ill. 484, 115 N. E. 618; Lehman v. Rothbarth, 159 Ill. 270, 42 N. E. 777. Upon a sale of the liens the statute requires a pro rata distribution of the funds realized. The ownership of the liens is in the municipality. The funds received by the

24

municipality from collection, foreclosure or sale of assessment liens are trust funds and the holders of the bonds are the beneficiaries of the trust. The municipality, when it lawfully receives money on the assessments and unlawfully and wrongfully withholds it from the bondholders, is liable for interest to the same extent as a private person acting as trustee. Under such circumstances the municipality may be surcharged with interest. First Nat. Bank v. Village of Stickney, 335 Ill. App. 596, 613, 82 N.E.2d 673; Conway v. City of Chicago, 237 Ill. 128, 86 N. E. 619.

In Fidelity Trust Co. v. Village of Stickney, supra, the court analyzes the Illinois cases and holds that the money which a municipality has collected in the payment of special assessments is a trust fund for the integrity of which the municipality is liable, and that a judgment for such money actually collected may be entered against the municipality and satisfied out of its general funds. The court further says: "As for the balance which it did not collect, although it was its duty to collect it, the village is not liable. It could not be held its duty to preserve as a trust fund that which it had never possessed. Conway v. City of Chicago, 237 Ill. 128, 86 N. E. 619." In Conway v. City of Chicago, supra, the court holds that where a municipality has collected funds under a special assessment and failed to turn over the money to the bondholders, the municipality is liable out of its corporate funds for the money so unlawfully withheld together with interest thereon. The court further holds that the general liability of a municipality for special assessments will not be extended beyond that which results from a failure to pay over money actually collected by it; nor are its general funds involved where it has failed in the discharge of its legal duties to collect moneys due under such special assessments. The general funds of the municipality may be reached where there is misuse of

25

money collected on special assessments, and the rules governing trustees do not apply until a res has actually come into existence by the collection of money by the municipality on the assessments or through foreclosure or a sale of the liens.

It is understandable in the instant case that the master should feel that the conduct of the sale, if there actually was a sale, was such that it would indicate on the part of the authorities of the village, to say the least, a very peculiar method of fulfilling their legal obligation to the village and its creditors. From the record, considering the manifold contradictions and inconsistent verified statements made on the part of the village, it is evident that there was no proper accounting made. The village does admit that it had in its possession $5,657.46 to which the plaintiff was entitled as a pro rata share on her bonds. At the hearing before the master the plaintiff offered in evidence, and the master admitted, the decree in the Chalberg case, to which we have previously referred. That decree was entered in a suit brought by parties other than the instant plaintiff against the Village of Stickney. That decree deals with special assessment No. 6 bonds and with the series held by the plaintiff with the exception of series H. The decree was entered in 1953. On the face of the decree appear the signature of Joseph Lustfield, the attorney for the village, and above his signature in his handwriting the word "approved." This is the same Joseph Lustfield who signed the pleadings, answers to interrogatories and admission of facts in the instant case, and who represented the village in the hearing before the master.

In its admission of facts in the instant case the village admits that the amounts shown in the schedule of plaintiff's notice to admit facts under the column "Principal Collected to 7/1/49" were established with reference to certain special assessment No. 6 bonds

in the Chalberg case of the same series as the bonds in the instant case; and, carrying over the pro rata distribution of the principal collected, as admitted in the Chalberg decree, to the bonds in the instant case the amount would be greatly in excess of the village's formal admissions concerning the assessments collected. Lustfield was placed on the witness stand and was asked to account for the difference between the amounts admitted by the village with reference to the collection of the series of bonds held by the plaintiff and the amount shown with respect to like bonds in the Chalberg decree, and he stated he could not account for the difference.

■■ The defendant village contends that the Chalberg decree was not properly in evidence. We can eliminate any question with reference to the decree as a conclusive admission on the part of the village. The parties are different, and the rules concerning res judicata or estoppel by finding do not apply. However we have a decree in which the court has recited in sufficient detail the basis of its findings. The decree is marked "approved" by the attorney for the village, and, under those circumstances, the decree is not only approved as to form but the findings therein are acquiesced in. It would be proper to treat the decree as an admission on the part of the village. Fox v. Fox, 9 Ill.2d 509, 138 N.E.2d 547. In Young v. Copple, 52 Ill. App. 547, a judgment in a criminal case (assault with a deadly weapon) rendered on a plea of guilty was held properly admitted in evidence as an admission to be weighed by the jury in connection with all other evidence in the case. See also Galvan v. Torres, 8 Ill.App.2d 227, 131 N.E.2d 367, and United States v. Wainer, 211 F.2d 669. In Campbell v. McLaughlin, 280 S. W. 189, the court holds that a judgment is not to be admitted on any principle of estoppel or res judicata since it has no binding force upon persons who are not

parties or privies as to any fact upon which such adjudication was made. "Such testimony is admissible as an ordinary admission of a party against interest, and it can make no difference what the precise form of the admission may assume. Any act, whether by oral statement, written pleadings, or conduct, whatsoever, by a person or by one authorized to speak or act for him, which fairly may be interpreted as an admission against interest upon a material matter of court inquiry, may be shown in evidence."

We hold that the Chalberg decree was properly in evidence. Through it there is prima facie proof of moneys collected by the village greatly in excess of the admitted amount of $5,657.46. In a suit brought by a holder of special assessment bonds against a municipality seeking an accounting of the funds allegedly collected by the municipality on the special assessments, the plaintiff establishes a prima facie case by showing ownership of the bonds, maturity and collections made by the municipality. The burden of going forward then rests upon the municipality. If it contends that the collections actually made were less than were established by the prima facie case it must show what collections were made and what was done with them. Fidelity Trust Co. v. Village of Stickney, supra; Rothschild v. Village of Calumet Park, supra. In First Nat. Bank & Trust Co. v. Village of Skokie, supra, it is said at p. 796: "The rule in Illinois, as elsewhere, is stated in Crimp v. First Union Trust & Savings Bank, 352 Ill. 93, 102, 185 N. E. 179, 183: '. . . Where there has been a negligent failure to keep trust accounts, all presumptions will be against the trustee upon a settlement; obscurities and doubts being resolved adversely to him. . . .' "

The plaintiff having satisfied her burden of proof by the admissions in the Chalberg decree that the amount collected was much in excess of $5,657.46,

28

there was prima facie proof of a trust fund. The village failed to sustain its burden of explaining what collections had actually been made and what was done with them. It clearly appears here that the village had negligently failed to keep proper records or to explain errors and omissions found therein. All doubts must be resolved against it. Crimp v. First Union Tr. and Sav. Bank, supra. There is no reference made in either the master's report or the decree, so far as we can determine, to the amount of $1,448.00 received at the sale of the assessment lien. Prorating such a sum on bonds supported by liens of approximately $1,000,000 would be an idle gesture. The law need not take cognizance of such trifles.

The amount of the judgment recommended by the master was too high. The actual judgment entered by the court was too low. The trial court considered that there was a sufficient accounting and took the amount for which he entered judgment from certain computations and abstracts in the handwriting of Lustfield which the latter said were taken from the books of the village, though no books were produced in evidence.

 Treating the Chalberg decree as an admission against the defendant village, the court may accept as the prorated principal collected on plaintiff's bonds the amounts of principal stated in said decree as collected by the defendant up to July 1, 1949 on the bonds in each of the series applicable in the decree, namely those in series B, E, F, G and I. While it cannot be determined whether the principal amounts so stated as collected up to July 1, 1949 included the principal amounts found under the 1937 decree as collected prior thereto by the village (and which amounts were paid pursuant to the 1937 decree), the plaintiff has apparently adopted the view, as is shown by her "Notice to

29

Admit Facts" served upon the defendant, that the Chalberg decree would include collections made prior to April 30, 1937 (the date covered by the 1937 decree). Accordingly, in determining the principal amounts collected and due the plaintiff the amounts of principal paid under the 1937 decree should be deducted from the principal found under the Chalberg decree to have been collected on each bond. The resulting principal balances appear in the order entered June 13, 1955 on plaintiff's "Notice to Admit facts," (except that the balance of principal due on bond No. 9 in series B should be $811.60 instead of $812.60). The village as trustee should be surcharged with interest upon receipt of the funds and failure to make timely disbursement. The Chalberg decree does not indicate the date of receipt of the funds, and in the absence of such evidence, the funds should be treated as having been received on July 1, 1949. Under the 1937 decree plaintiff's prorated share of those funds would have been payable to the plaintiff on May 1, 1950. In surcharging the village, interest on the principal amount of the bonds in the above mentioned series should be calculated from May 1, 1950 at the rate of five per cent per annum to the date of entry of the decree.

The Chalberg decree is silent as to interest collected prior to July 1, 1949 on the bonds in the above series. Plaintiff's exhibit 2B, prepared by the attorney for the village and testified by him to be correct, shows the amounts of interest collected upon the bonds in each of such series between April 30, 1937 and July 1, 1949. The plaintiff is entitled to her prorated share of those amounts and the village should be surcharged at the rate of five per cent per annum upon the amounts actually collected in each of those years, the surcharge to be computed, from the date such annual collections

30

should have been disbursed pursuant to the 1937 decree, to the date of the entry of the decree.

The Chalberg decree is also silent as to plaintiff's series H bonds. With respect to this series the court may accept plaintiff's exhibits Nos. 2A and 2B as admissions with respect to this series. Exhibit 2A was also prepared by the attorney for the village and testified by him to be correct. These exhibits indicate the amounts of principal and interest collected on the series H bonds for the period from April 30, 1937 until July 1, 1949. The plaintiff is entitled to her pro-rated share of those funds, and the village should be surcharged at the rate of five per cent per annum upon the amounts actually collected in each of those years, the surcharge to be computed, from the date such annual collections should have been disbursed to the plaintiff pursuant to the 1937 decree, to the date of entry of the decree.

The decree of the Superior Court is reversed, and the cause is remanded with directions to enter a decree for the plaintiff in accordance with the views herein expressed, such decree to include judgment against the Village of Stickney for the master's fees and costs, and such decree to bear interest at the rate of five per cent per annum from the date thereof.

Reversed and remanded with directions.

SCHWARTZ, P. J. and DEMPSEY, J., concur.